IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

Richard Miller,                         §
                                        §
        *Plaintiff*,                    §
                                        §
v.                                      §            **CASE NO. 3:09-CV-440-O**
                                        §            **ECF**
Raytheon Company,                       §
                                        §
        *Defendant,*                    §
                                        §

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court is Defendant Raytheon Company's Motion for Summary Judgment (Doc.
# 39), filed March 15, 2010 ("Def. Mot. ").  Having considered this motion, related briefing, the
evidence, and the applicable law, the Court finds that it should be and is hereby **DENIED**.

Plaintiff Richard Miller ("Plaintiff" or "Miller") filed this lawsuit on March 6, 2009,
alleging that Defendant Raytheon Company ("Defendant" or "Raytheon") terminated him and failed
to rehire him due to his age.  Plaintiff brings claims for age discrimination in violation of the Age
Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34 (2006), and the Texas
Commission on Human Rights Act ("TCHRA"), Tex. Labor Code Ann. §§ 21.001-.106 (Vernon
2009) , and seeks compensatory damages, punitive damages, equitable relief, attorneys fees, expert
fees, and costs of suit.

On March 15, 2010, Defendant filed its Motion for Summary Judgment.  Defendant contends
that Plaintiff has presented no evidence of age discrimination, and asks the Court to grant summary
judgment in its favor as to all of Plaintiff's claims.  The issues have been briefed by the parties and

this matter is ripe for determination.

I.      Background

        The facts described herein are either undisputed or stated in the light most favorable to

Plaintiff, the non-movant.  Plaintiff, who holds a degree in mechanical engineering, worked for

Defendant Raytheon, or for its predecessor, for nearly 29 years.[1]  During his tenure, Plaintiff worked

in a variety of roles.  He spent much of his time in Supply Chain Management ("SCM") and gained

extensive knowledge in his field.  Plaintiff built a record of employment performance, and prior to

his termination, no supervisor voiced concerns or criticism to him regarding his performance.

Through the course of his employment, Plaintiff received 28 performance evaluations of "Meets

Expectations" or higher, and he exceeded expectations in 17 of those evaluations.

        Space and Airborne Systems ("SAS") is one of Defendant's six major businesses.  SAS is

further subdivided into five program areas and non-program units such as SCM.  In 2003, Plaintiff

was promoted to the lead SCM position supporting the PASS program.  In that role, he managed 60

employees.  Though he began reporting to Dina Hyde ("Hyde") in 2005, in 2006, Hyde reassigned

Plaintiff to the new SAS-developed platform called PRISM.  In his new position, Plaintiff reported

to both the director of SCM operations, Robert Lyells ("Lyells"), as well as the head of the PRISM

program, Joe Milliron ("Milliron").  Plaintiff interacted with Lyells one to two times per month,

while he interacted with Milliron on a weekly basis.  Plaintiff billed his time to the PRISM program

rather than to SCM.

        In March 2007, Miller received a rating of "Meets Expectations" for his first evaluation in

his new role.  Later, in August, Lyells conducted a mid-year performance review with Miller, in

---

[1]Plaintiff was originally hired by Texas Instruments in 1979.  In the late 1990s, Raytheon acquired the
division of Texas Instruments for which Plaintiff worked.

which he neither expressed dissatisfaction with Miller's performance nor suggested ways in which he might improve.

Raytheon began preparation for a reduction in force ("RIF") in early 2008. Plaintiff contends that the RIF was conducted in a discriminatory manner and that he was selected for termination under the RIF due to his age. To effectuate the RIF, Raytheon's policy required SCM managers to evaluate all employees, divide them into "decisional units," rank them on a four-factor analysis, and recommend reduction accordingly. Afterwards, Human Resources was to determine whether the selected employees were suited for placement elsewhere in SAS.

Plaintiff contends that Raytheon deviated from procedure in his case. He claims that Lyells selected five of the direct reports from his group of 60 and placed those individuals into decisional units without considering the other employees. Plaintiff was placed into a decisional unit called "Special Projects" with 54-year-old Kenneth Barnham ("Barnham"), who had also been with the company for almost 30 years.

In addition to Barnham and Miller, Lyells included the following employees in his decisional units: a 49-year-old and a 55-year-old, each of whom had worked for Raytheon for over 25 years, and a 34-year-old who had worked for Raytheon for eight years. Of these five, the 34-year-old was the only employee who was not ultimately terminated in the RIF. Additionally, 46-year-old Linda Keenan ("Keenan") who, like Plaintiff, worked for PRISM but billed her labor elsewhere, was not placed into a decisional unit. Overall, more than half of the 13 employees fired in the RIF were over 50 years of age.

On March 13, 2008, Lyells and Human Resources representative Allen Reid ("Reid") traveled to Dallas from California and called Plaintiff into a meeting. While Plaintiff believed this

meeting would involve a discussion of his bonus, he was instead terminated without explanation. The meeting notifying him of his termination was the first time Plaintiff was made aware that he had been given an "Improvement Required" ("I") performance rating for the year of 2007. Further, Plaintiff was informed that his "I" rating rendered him ineligible for a bonus he would have otherwise received. When Plaintiff inquired as to the basis for this rating, Lyells and Reid refused to respond.

Just prior to his termination, Plaintiff's former job supporting the PASS system (re-named "ISR") became available. Although Plaintiff did not apply for the position, Plaintiff contends that Defendant should have considered him for it. Instead, the position, which called for 14 years of Supply Chain management experience, was filled by 34-year-old Mike Ryanbrandt ("Ryanbrandt") who had approximately five years of experience. This promotion was justified on the basis that Ryanbrandt was a "change agent" or someone who could think outside the box.

Plaintiff attempted to find another placement at Raytheon by searching Defendant's internal job site. He applied unsuccessfully for three positions, although one of the three positions was later canceled. In addition, Plaintiff met with SCM's Texas Human Resources lead, Amos Wilson, ("Wilson") and related his experience with Lyells. Plaintiff contends that Wilson commented that the termination process "was not done very well," though the context and significance of this comment are disputed. Plaintiff also discussed with Wilson the added difficulty that he would encounter in his job search as a result of his "I" performance rating. Although Wilson offered to assist Plaintiff, his only real assistance was to suggest that Plaintiff search for jobs below his salary grade level and to inform Plaintiff that he would not be considered for a supply chain job. Wilson also neglected to let Plaintiff know of an open position in ISR systems under Lisa Crump

("Crump").

Between February and May 2008, nine positions came open for which Plaintiff would have been eligible, excluding those positions significantly below his salary grade.  Plaintiff contends that Defendant's practice is to find internal placement for employees like himself who have been selected for an RIF.  While Reid claimed that he was unable to find any potential job placements for Plaintiff, Plaintiff challenges the credibility of this claim, as Plaintiff discovered three open positions himself via Raytheon's internal website.  When asked to conduct another search, Reid found a position for which Plaintiff would have been eligible, but he failed to communicate that information to Plaintiff.

Lyells also professed an inability to find an available position for Miller, despite allegedly speaking with Mike Paquee ("Paquee"), who approved the ISR position under Crump.  Meanwhile, Plaintiff independently applied for this position.  Despite being qualified for the position, he was rejected.  In addition, Plaintiff claims that when Crump presented him as a candidate, SCM Vice President Vivek Kamath ("Kamath") responded, "Dick Miller is not an option."

Finally, Plaintiff contends that Defendant made multiple misrepresentations in response to Plaintiff's EEOC claim, including the following: stating that Miller "was told of several opportunities" when he was in fact not; claiming that Reid told Miller he could apply for open positions, while failing to mention Wilson's comment that Miller would not be considered for supply chain positions; and claiming that Miller refused to apply for positions below his salary grade, when Miller actually expressed a willingness to do so.

II.    Legal Standard

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of

law. Fed. R. Civ. P. 56(c).  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24.  To carry this burden, the "opponent must do more than simply show. . . some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor.  *Anderson*, 477 U.S. at 249.  Neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.  *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  Summary judgment in favor of the Defendant is proper if, after adequate time for discovery, the Plaintiff fails to establish the existence of an element essential to her case and to which she will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.

When reviewing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant.  *See Walker v.*

*Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988).  The court cannot make a credibility

determination in light of conflicting evidence or competing inferences.  *Anderson*, 477 U.S. at 255.

As long as there appears to be some support for the disputed allegations such that "reasonable minds

could differ as to the import of the evidence," the motion for summary judgment must be denied.

*Id.* at 250.

III.    Causation Standard Under the TCHRA

        As a preliminary matter, Plaintiff and Defendant disagree as to what causation showing

Plaintiff must meet under the TCHRA.  The law is presently not well-settled as to what causation

showing is required for an age discrimination claim brought pursuant to the TCHRA.  *Compare*

*Houchen v. Dallas Morning News, Inc.,* No. 3:08-cv-1251-L, 2010 WL 1267221, at *4, *10 (N. D.

Tex. Apr. 1, 2010) (applying different standards to ADEA and TCHRA claims), *with McMartin v.*

*Officemax Inc.*, No. 3:08-cv-0297-k, 2009 WL 2340941, at *5 (N. D. Tex. Jul. 27, 2009) (holding

TCHRA claims to the same "but-for" standard as ADEA claims) *and Cory v. Brady Indep. Sch.*

*Dist.*, No. 03-09-00098-CV, 2009 WL 2837629, at *1 n.1 (Tex. App.–Austin Aug. 31, 2009, no pet.

h.) (mem. op.) (stating that there should be "no practical distinction" in the analysis of ADEA and

TCHRA claims).  Specifically, courts disagree over whether the TCHRA requires a plaintiff to show

that age discrimination was a but-for cause of the complained-of act (as does the ADEA), or instead

requires only that a plaintiff show that age discrimination was a motivating factor in the complained-

of act (as does Title VII).  *See Gross v. FBL Fin. Servs.*, 129 S. Ct. 2343, 2352 (2009) (interpreting

the text of the ADEA to hold that but-for causation is necessary in age discrimination claims brought

pursuant to the ADEA); *compare Houchen*, 2010 WL 1267221, at *4, *10 *with McMartin,* 2009 WL

2340941, at *5 *and Cory,* 2009 WL 2837629, at *1 n.1.  It is not necessary for this Court  to take a

position on this issue, however, as summary judgment should be denied in this case even under the more stringent standard.  Accordingly, Plaintiff's respective state and federal law claims for age discrimination are analyzed together in this opinion.

The Court will now address why summary judgment should be denied.

IV.     Analysis

Defendant moves for summary judgment on all of Plaintiffs' claims.  Defendant first argues Plaintiff has failed to establish a *prima facie* case of age discrimination.  Alternatively, Defendant argues that it has identified legitimate, non-discriminatory reasons for the actions of which Plaintiff complains and that Plaintiff cannot show these proffered reasons are a pretext for age discrimination. Defendant asks the Court to grant judgment in its favor as to all of Plaintiff's claims.

Plaintiff contends that he has produced sufficient circumstantial evidence to both support a *prima facie* case of age discrimination and to raise genuine fact issues regarding whether Defendant's proffered reasons are a pretext for age discrimination.  Thus, Plaintiff asks the Court to deny summary judgment and allow a jury to decide questions of fact.  For the reasons explained below, the Court agrees that summary judgment should be denied.

A.     **Authority**

The ADEA, a federal statute, makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a) (2006).  The TCHRA, a Texas state statute, similarly prohibits employment discrimination or classification based

upon age.[2]Tex. Labor Code Ann. § 21.051.

To withstand an employer's motion for summary judgment in a discrimination case, a plaintiff must present evidence, which can be direct or circumstantial, sufficient to create a genuine issue of fact that he was discriminated against by an employer. *See Evans v. City of Bishop*, 238 F.3d 586, 590-92 (5th Cir. 2000) (ADEA); *Horak v. Glazer's Wholesale Drug Co., ,* No. 06-10854, 2007 WL 713154, at *2 (5th Cir. 2007) (ADEA and TCHRA).

A court's analysis regarding whether a plaintiff has raised a genuine issue of fact depends upon whether plaintiff presents direct or circumstantial evidence. *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004). When the evidence is direct, courts use a conventional approach in assessing whether summary judgment should be granted. *Id.* However, when a plaintiff relies on circumstantial evidence, courts must evaluate the case within the burden-shifting framework erected by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) and its progeny. *See Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005); *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003).

Here, Plaintiff does not present direct evidence of discrimination. Because Plaintiff's evidence is circumstantial, the Court evaluates whether summary judgment is appropriate using the *McDonnell Douglas* approach.[3] *Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 252 (5th Cir. 1996).

---

[2] The TCHRA states, "[a]n employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer: (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee." Tex. Labor Code Ann. § 21.051.

[3]The Fifth Circuit has held that the *McDonnell Douglas* burden shifting framework also applies to age discrimination cases brought in this Circuit under the ADEA even though this question has not been finally decided by the United States Supreme Court. *See Davis v. Farmers Ins. Exch.*, No. 09-10729, 2010 WL 1404000, at *2 n.1 (5th Cir. April 6, 2010). The *McDonnell Douglas* framework is also applied to age discrimination cases brought

The *McDonnell Douglas* burden-shifting approach has three phases. *See id.* at 252 n.3 (citing *McDonnell Douglas*, 411 U.S. at 802-04). Under the first prong, a plaintiff must demonstrate a *prima facie* case of discrimination. *Id.* In RIF cases, the *prima facie* elements are altered from other cases of age discrimination. *Thompson v. Origin Tech. In Bus., Inc.*, No. 3:99-CV-2077-L, 2001 WL 1018748, *5 (N.D. Tex. Aug. 20, 2001) (citing *Thornbrough v. Columbus & Greenville R.R.*, 760 F.2d 633 (5th Cir. 1985)). In RIF cases, a *prima facie* case is established by evidence that: (1) the plaintiff was within the protected class (*e.g.* was over 40 years of age) at the time of the employer's complained-of decision; (2) he was adversely affected by the employer's decision; and (3) he was qualified to assume another position." *Woodhouse*, 92 F.3d at 252. Additionally, the plaintiff must present either direct or circumstantial evidence from which a fact finder might reasonably conclude that the employer intended to discriminate in reaching its decision. *Id.*

Once a plaintiff makes a *prima facie* case, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for the challenged employment decision. *Id.* The defendant need not persuade the court that it was actually motivated by the proffered reasons. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). At this stage, the burden on the employer is only one of production, not persuasion, and involves no credibility assessments. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. *Burdine*, 450 U.S. at 254. However, the explanation provided must be legally sufficient, assuming it is

---

under the TCHRA. *See Machinchick v. PB Power, Inc.* 398 F.3d 345, 356 (5th Cir. 2005) (citing *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 481 (Tex. 2001)) (stating that the McDonnell Douglas burden shifting analysis applies at the summary judgment stage to age discrimination claims brought under TCHRA; *see also Braymiller v. Lowe's Home Ctrs., Inc.,* 325 F. App'x .. 311, 313–14(5th Cir. 2009); *Houchen v. Dallas Morning News*, No. 3:08-CV-1251-L, 2010 WL 1267221, at *10–*11 (N.D. Tex. April 1, 2010) .

believed, to justify a judgment for the defendant. *Id* at 255.

Once a defendant articulates a legitimate, nondiscriminatory reason for the employment decision at issue, the burden shifts back to the plaintiff to offer evidence that defendant's articulated reason is merely a pretext for discrimination. *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996). As the Fifth Circuit has stated, "[i]f [the plaintiff] can raise a genuine issue of material fact as to whether he has established pretext, that will suffice to avoid summary judgment." *Id.*[4]

**B.    Application**

Defendant first argues that Plaintiff has not established a *prima facie* case of age discrimination. Defendant argues that, in the alternative, it has offered legitimate reasons for terminating Plaintiff, and Plaintiff has not shown these reasons are a pretext for age discrimination. The Court will first address Plaintiff's *prima facie* showing.

**1.** *Prima Facie* Showing of Age Discrimination

Plaintiff has made a *prima facie* showing of age discrimination. The parties do not dispute that Plaintiff has met the first two prongs of his *prima facie* case: (1) he was 53 years old at the time he was terminated; and (2) he was adversely affected by Defendant's decision. Additionally, Plaintiff has presented evidence that he was qualified to assume another position, including the ISR systems lead supply chain position. Finally, Plaintiff has presented circumstantial evidence from which a fact finder might reasonably conclude that the employer intended to discriminate in reaching

---

[4]As addressed *supra*, it is unsettled whether the TCHRA permits a plaintiff to meet his burden at this stage by presenting evidence that age was a motivating factor for the defendant's adverse employment decision (the "mixed-motive method"). It is settled, however, that a mixed-motive showing is insufficient under an ADEA claim. *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2350 (2009).

its decision regarding Plaintiff's employment.  For example, Plaintiff has presented evidence that his manager, Lyells, provided immunity from the established RIF analysis and ranking process to all but five subordinates.  Of these five employees who were selected for consideration in the RIF, four were age 49 to 55 and one was age 34.  The four older employees were ultimately selected for the RIF, while the 34-year-old employee was not.  Overall, Raytheon terminated thirteen supply chain management employees in the March 2008 RIF.  More than half of these terminated employees were over 50 years of age, and eleven of the thirteen were over 40 years of age.

**2.** Defendant's Proffered Legitimate Reasons

Defendant has responded with non-discriminatory reasons for its decisions regarding Plaintiff.  First, Defendant states that Lyells (and the other Raytheon managers) were instructed not to consider age in the decision on who to include in the RIF.  Defendant also contends that Plaintiff was an "indirect contributor" meaning that his time was not billed to particular projects and therefore generated only overhead and not revenue.  Thus, Defendant asserts, "budget savings were realized from laying off Miller."  Doc. 39-2 at 10.  Defendant also points to the fact that Lyells gave Plaintiff an "I" rating in December 2007, before the RIF was announced.

**3.** Plaintiff's Evidence of Pretext

Plaintiff responds with sufficient evidence to create a genuine issue of material fact for the jury as to whether age discrimination is the true reason he was included in the RIF.  Plaintiff first presents evidence countering Defendants's proffered reasons.  Plaintiff contends that a jury might or might not credit self-serving testimony presented by Defendant that managers were told not to consider age in making their RIF decisions.  Additionally, Plaintiff disputes that the treatment he received was motivated by budgetary savings, and asserts that his labor was charged to the PRISM

program rather than to Lyell's budget or the SCM department's budget.  Plaintiff also identifies a younger employee whose labor was similarly charged, but who was not terminated.  As to the "I" performance rating, a review of the summary judgment materials suggests that Plaintiff was criticized for being passive rather than being a change agent.  *See* Doc. # 48-10 at p. 6 (Miller's 2007 Performance & Development Summary).  Plaintiff asserts that rating was unwarranted and was given by Raytheon to pave the way for his termination.  Plaintiff also asserts that Raytheon made false statements to the EEOC in connection with its investigation regarding Raytheon's efforts to inform Plaintiff of other job opportunities, as well as Plaintiff's unwillingness to look for positions below his job grade.  Plaintiff asserts that a jury could infer that Raytheon made these misrepresentations in an attempt to conceal its discrimination from the EEOC.  Finally, Plaintiff asserts that Raytheon refused to consider him for other open positions for which he was qualified and argues that this supports a conclusion that Raytheon, "intended to rid itself of Miller."  Doc. # 50 at 51.  Plaintiff argues that this evidence, combined with his *prima facie* showing of age discrimination, is sufficient for a jury to find in his favor on his claims.  *See Uffelman v. Lone Star Co.*, 863 F.2d 404, 407-08 (5th Cir. 1989) (holding that contradictory claims about plaintiff's previous job performance, retention of younger employees in same position, and disproportionate termination of older workers support a finding of discriminatory motive).  Applying the appropriate summary judgment standard, the Court finds that Plaintiff has raised genuine issues of fact for a jury to decide.

   V.   Conclusion

   For the foregoing reasons, the Court hereby **DENIES** Defendant's motion for summary judgment (Doc. # 39).

**SO ORDERED** on this **9th** day of **June, 2010**.


Reed O'Connor
**UNITED STATES DISTRICT JUDGE**