IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICHARD MILLER | § § § | |
| *Plaintiff,* | § § § | CIV. A. NO. 3:09-cv-0440-O ECF |
| v. | § § | |
| RAYTHEON COMPANY, | § § | |
| *Defendant.* | § | |

## PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE

Hal K. Gillespie
*Attorney-in-Charge*
Texas Bar No. 07925500
Yona Rozen
Texas Bar No. 17958500
Edith K. Thomas
Texas Bar No. 24060717
James D. Sanford
Texas Bar No. 24051289

GILLESPIE, ROZEN, WATSKY, P.C.
3402 Oak Grove Avenue, Suite 200
Dallas, Texas 75204
Tel.:   (214) 720-2009
Fax:   (214) 720-2291
E-mail: hkg@grwlawfirm.com
           yrozen@grwlawfirm.com
           ethomas@grwlawfirm.com
           jsanford@grwlawfirm.com

# **TABLE OF CONTENTS**

I. OVERVIEW OF DEFENDANT'S MOTION ........................................................................ 1

II. ARGUMENTS AND AUTHORITIES IN OPPOSITION ..................................................... 2

    A.    Wilson's testimony, informed by years of professional
HR experience at Raytheon, is probative of pretext; as Miller's
HR point of contact, Wilson speaks for Raytheon ................................................. 2

    B.    The wholly unjustified "I" rating is powerful evidence of pretext
and evidences Lyells's discriminatory intent even if issued
prior to the RIF ...................................................................................................... 4

    C.    Both the Fifth Circuit and this Court have recognized
that a failure to consider a well-qualified employee for open positions
following a RIF is probative of discrimination ...................................................... 6

    D.    The age impact of Raytheon's RIF decision-making
is highly probative; Lyells was one among several who implemented
the age-biased RIF process
.................................................................................................................................. 9

    E.    Miller's testimony concerning his pension benefits is probative
of his damages and of Raytheon's discriminatory intent ..................................... 10

    F.    Evidence concerning other employees impacted by
the March 2008 RIF is additional evidence of Raytheon's
discriminatory intent ............................................................................................ 10

    G.    Raytheon erroneously seeks to prevent the jury from
considering Miller's damages ............................................................................. 11

III. CONCLUSION ..................................................................................................................... 12

CERTIFICATE OF SERVICE ..................................................................................................... 13

# **TABLE OF AUTHORITIES**

## **CASES**

*Arismendez v. Nightingale Home Health Care, Inc.*,
    493 F.3d 602 (5th Cir. 2007) ..................................................................................... 3

*Cronin v. Aetna Life Ins. Co.*,
    46 F.3d 196, 206 (2d. Cir. 1995) ............................................................................... 6

*Diaz v. AT&T*,
    752 F.2d 1356 (9th Cir. 1985) ................................................................................... 9

*Garcia v. Courtesy Ford, Inc.*,
    No. C06-855RSL, 2007 WL 1430196 (W.D. Wash. May 10, 2007) ........................ 9

*Garrett v. Hewlett-Packard Co.*,
    305 F.3d 1210 (10th Cir. 2002) ............................................................................. 4-5

*Guzzo v. Queen of Angels School*,
    Civ. A. No. 05-933, 2007 WL 712122 (W.D. Pa. Mar. 7, 2007) ............................ 10

*Hansard v. Pepsi-Cola Metro. Bottling Co., Inc.*,
    865 F.2d 1461 (5th Cir. 1989) ............................................................................ 4, 12

*Hollander v. Am. Cyanamid Co.*,
    895 F.2d 80 (2d. Cir. 1990) ....................................................................................... 9

*Julian v. City of Houston, TX*,
    314 F.3d 721 (5th Cir. 2002) ................................................................................... 12

*McCullough v. Houston County, TX*,
    297 Fed. Appx. 282 (5th Cir. 2008) .......................................................................... 8

*Mitchell v. Fishbein, et al.*,
    227 F.R.D. 239 (S.D.N.Y. 2005) ............................................................................... 9

*Norris v. Hartmarx*,
    913 F.2d 253 (5th Cir. 1990) .............................................................................. 4-6, 8

*Palasota v. Haggar Clothing Co.*,
    499 F.3d 474 (5th Cir. 2007) ................................................................................... 12

*Rubinstein v. Admin. of Tulane Educ. Fund*,
    218 F.3d 392 (5th Cir. 2000) ..................................................................................... 3


*Shackelford v. Deloitte & Touche, LLP,*
    190 F.3d 398 (5th 1999) .................................................................................................. 4

*Suboh v. BellSouth Bus. Systems, Inc.,*
    Civ. A. No. 1:03-cv-0996, 2004 WL 5550100 (N.D. Ga. Nov. 17, 2004) ....................... 9

*Uffelman v. Lonestar Steel Co.,*
    863 F.2d 404 (5th 1989) ........................................................................................ 4, 10-11

## STATUTES

Tex. Lab. Code § 21.051 ............................................................................................................ 12

## RULES

### Federal Rules of Civil Procedure

Rule 26(a)(1), (3) ..................................................................................................................... 8-9

Rule 37(c)(1) ................................................................................................................................ 9

### Federal Rules of Evidence

Rule 403 .................................................................................................................................... 13

Rule 701 ...................................................................................................................................... 4

Rule 801(d)(2) ............................................................................................................................. 3

## OTHER

### FIFTH CIRCUIT LABOR & EMPL. PATTERN JURY CHARGE [2009 ED.]

Committee Introduction to the Age Discrimination in Employment Act ................................. 11

Section 11.9.3 ........................................................................................................................... 11

### TEX. PATTERN JURY CHARGES – BUSINESS, CONSUMER, EMPLOYMENT [2008 ed.]

PJC § 115.30.............................................................................................................................. 12

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICHARD MILLER | § | |
| | § | |
| *Plaintiff,* | § | CIV. A. NO. 3:09-cv-0440-O |
| | § | ECF |
| v. | § | |
| | § | |
| RAYTHEON COMPANY, | § | |
| | § | |
| *Defendant.* | § | |

### PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE

TO THE HONORABLE REED O'CONNOR:

In accordance with the Court's March 25, 2010 trial setting order, Plaintiff Richard Miller submits the following brief in opposition to Defendant's *Motion in Limine* (Doc. No. 67). Plaintiff respectfully states as follows in support of his position that the following categories of evidence are admissible in this age discrimination lawsuit.

### I. OVERVIEW OF DEFENDANT'S MOTION

Raytheon's motion *in limine* asks the Court to exclude outright considerable evidence of age discrimination and, incredibly, all of Miller's evidence supporting his claims for damages. Among the *limine* issues proposed are (1) non-hearsay statements by Miller's primary Human Resources contact (Amos Wilson) concerning Miller's termination and the company's failure to consider Miller for other positions, (2) testimony and documentary evidence concerning the fabricated "I" rating delivered to Miller at his termination meeting, (3) evidence of numerous contemporaneously available positions for which Miller was qualified but never considered, (4) testimony about the age impact of the March 2008 RIF, (5) lay testimony about Miller's pension benefits, for which he was only a few months shy of eligibility at the time of termination, (6)

evidence concerning other older employees included in the March 2008 RIF, and (7) Miller's *entire* evidence concerning his damages. Categories (1) through (6) each constitute relevant evidence of pretext and/or discriminatory intent, as explained below, and category (7) is an invitation to commit reversible error by restricting Miller from putting on evidence of the harm caused by Raytheon's discrimination.

Raytheon's trial strategy appears to be to draw laser-like focus on the narrowest possible set of facts, thereby obscuring surrounding evidence of its age bias, much as it attempted to do on summary judgment. The sum of Miller's evidence, as the Court correctly recognized in its order denying summary judgment, amounts to a series of genuinely disputed fact issues that should be left to the jury to decide. Mem. Op. and Order Denying Summ. Judgment at 13 (Doc. No. 61). Rather than address those fact issues before the jury, however, Raytheon would have the Court preempt the jury by discarding the evidence outright. Miller respectfully urges the Court to reject Raytheon's efforts to carve out highly probative evidence but, on the contrary, to allow the jury to serve its proper role as the finder of fact in determining whether Raytheon terminated him because of his age.

## II. ARGUMENTS AND AUTHORITIES IN OPPOSITION

### A. Wilson's testimony, informed by years of professional HR experience at Raytheon, is probative of pretext; as Miller's HR point of contact, Wilson speaks for Raytheon

Raytheon's first challenge goes to statements made by Amos Wilson, who was a career Human Resources professional, Miller's designated Human Resources point of contact following termination, and the internal investigator who presented Raytheon's response to Miller's age complaint to the EEOC. Wilson depo. 9:13-22, 17:6-16, 46:19-47:13, 97:9-15. Miller and Wilson met roughly two weeks after Miller's firing, during which meeting they discussed Miller's shock at the termination, the "I" rating, Miller's interest in other positions with Raytheon, and Wilson's impression of the way the RIF was carried out. Miller Apr. 8, 2010 dec.

¶ 17. Prior to the March 2008 RIF, Allen Reid briefed Wilson on the methodology and rationale employed in selecting individuals for inclusion in the RIF. Wilson depo. 19:10-18.

Raytheon now attempts to disavow Wilson's comments and asks that the Court exclude them. The Court should reject Raytheon's attempt to conceal relevant evidence on faulty premises. First, Wilson's statements are not hearsay. Wilson was Miller's Human Resources point of contact, and his discussion of the RIF was well within the scope of his duties. Indeed, Raytheon designated Wilson as *the* person to answer "questions from – from employees or supervisors regarding, you know, the process or – or just any questions they may have regarding [the RIF]." Wilson depo. 17:5-16. Thus, his view of the March 2008 RIF was not only informed by his 13 years of Human Resources experience and training but by the information received from Reid for the specific purpose of answer questions about the RIF process. Under these circumstances, the technical distinction that Wilson was not involved in *selecting* Miller is not determinative. *See* Fed. R. Evid. 801(d)(2), Advisory Committee Note (2)(D) to subdivision (d)(1972 Proposed Rules)( and noting that employers rarely "employ agents for the purpose of making damaging statements…" and acknowledging the substantial trend in favor of admitting statements within the scope of agency or employment). Wilson spoke as Raytheon's designated representative about the very topics assigned to him to discuss.

Second, Wilson's non-hearsay comments are probative evidence of pretext and/or Raytheon's discriminatory intent. Here, Raytheon improperly attempts to benefit from the Fifth Circuit's "stray remarks" doctrine as a bar to this evidence. *See Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 608 (5th Cir. 2007)(concluding that sex-biased comments were *direct* evidence of discrimination and not "stray remarks"); *Rubinstein v. Admin. of Tulane Educ. Fund*, 218 F.3d 392, 401 (5th Cir. 2000)(concluding concerning "Russian Yankee[s]" and "Russian Jew[s]" were best viewed as stray remarks). Its efforts would be more

on point if Miller were offering this evidence as direct evidence of discrimination. Since he is not, however, authorities disallowing "stray remarks" to serve as direct evidence of discrimination are inapposite. Instead, this evidence is perfectly valid evidence in the form of a lay opinion. *See Hansard v. Pepsi-Cola Metro. Bottling Co., Inc.*, 865 F.2d 1461, 1465 (5th Cir. 1989)(affirming trial court's admission under Fed. R. Evid. 701 of co-worker's opinion that termination resulted from company's "youth movement" although he had no first-hand knowledge of the reason for the plaintiff's termination). While Wilson's statements may not evidence discriminatory animus in and of themselves, they cast doubt on the credibility of Raytheon's non-discriminatory reason and are therefore evidence of pretext. Similarly, that Wilson made these statements but later offered differing—even contradictory—views in responding to Miller's EEOC charge is yet another credibility question for the jury.

**B.     The wholly unjustified "I" rating is powerful evidence of pretext and evidences Lyells's discriminatory intent even if actually issued prior to the RIF**

Continuing in its theme that all evidence harmful to Raytheon's case is inadmissible, Raytheon argues that Lyells's sudden and unexplained negative assessment of Miller's performance is irrelevant. As this Court correctly concluded, an employer's false criticism of an employee's performance can be evidence of the employer's discriminatory intent. Mem. Op. and Order at 13 (citing *Uffelman v. Lone Star Co.*, 863 F.2d 404, 407-408 (5th Cir. 1989); *see also Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409-410 (5th 1999)(in retaliation case, finding that the plaintiff's first negative review after four years of positive evaluations was some evidence of pretext); *Norris v. Hartmarx Specialty Stores, Inc.*, 913 F.2d 253, 256 (5th Cir. 1990)(in Title VII case, concluding that negative review just before termination, which was the only negative rating plaintiff received and which she never saw, was evidence of pretext); *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1219 (10th 2002).

The dubious—and contested—claim that Lyells downgraded Miller's (and Barham's) performance prior to the initiation of the RIF process is a diversion. The facts are that Lyells, who had very little day-to-day supervisory contact with Miller, issued Miller the first substandard performance evaluation in Miller's 28-year career. Pl.'s MSJ Resp. Br. at 9. Tellingly, he did the same to Barham (then 54). *Id.* The evidence at trial will also show that Lyells was aware of upcoming lay-offs at least as early as October 2007. Standing against this evidence is nothing more than Lyells's claim that he issued the "I" rating in late 2007, as Raytheon has disclosed no contemporaneous documentation of the performance rating process. A jury is entitled to discount Lyells's unsubstantiated testimony. From there, it can infer that the eleventh hour, negative ratings given to both Miller and Barham were Lyells's preparatory steps toward trimming older workers when it came time for the RIF.

Moreover, even if Raytheon were able to establish that Lyells in fact issued the "I" ratings in December 2007, that he did so nonetheless is classic pretext evidence. *Norris*, 913 F.2d at 256. The Fifth Circuit's affirmance of the district court's verdict in *Norris v. Hartmax* is instructive. *Id.* In finding that Madeline Norris's employer terminated her as part of a RIF because of her race, the court considered evidence that, prior to discharge, Norris had received consistently good performance ratings and two merit raises. *Id.* at 255. The only negative performance review during her employment came in her last evaluation—<u>an evaluation that she never saw</u>. *Id.*; *compare* Miller Apr. 8. 2010 dec. ¶ 15 (Prior to termination meeting, "Lyells had never previously criticized [Miller's] performance, suggested it was deficient, or even hinted that an 'I' rating was possible."). Untroubled by the notion that the negative review may have predated any RIF decision-making, the Fifth Circuit held that this attempt to justify the termination supported an inference of discrimination. *Id.*

Like Norris's employer, Raytheon issued an undisclosed, highly critical performance evaluation just prior to a RIF. And as in *Norris*, this evidence is relevant to the fact-finder's assessment of Raytheon's non-discriminatory reason. At minimum, the late, undisclosed issuance of two of Lyells's older direct-reports is some evidence of his bias against older employees. The court should therefore reject Raytheon's request to exclude highly probative evidence.

C. **Both the Fifth Circuit and this Court have recognized that a failure to consider well-qualified employees for open positions following a RIF is probative of discrimination**

The Court's order denying Raytheon's summary judgment motion noted Miller's evidence that Raytheon refused to consider Miller for multiple open positions for which he was qualified. Mem. Op. and Order at 13 (Doc. No. 61). As Miller argued, this repeated refusal to consider a top-performing employee for open positions was inconsistent with the company's supposed budgetary rationale and allowed for an inference of age discrimination. Pl.'s MSJ Resp. Br. at 42. Instead of taking on Miller's argument, Raytheon attempts to carve out evidence of discrimination by, first, mischaracterizing Miller's claims and, second, improperly importing standards from so-called failure-to-hire cases.

Raytheon urges the Court to bend Miller's arguments into a stand-alone of cause of action for failure to rehire him, when this is not Miller's claim. While it may be proper to require the plaintiff to submit evidence of an inquiry when the plaintiff claims discrimination in the failure to hire her for a specific position, evidence of open positions in the midst of a RIF is often viewed as evidence relevant to the employer's discriminatory intent. *See Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 206 (2d. Cir. 1995)(reversing summary judgment and concluding that evidence that employer deliberately refused to consider employee for positions for which it knew him to be well-qualified allowed for an inference of age discrimination); *Norris*, 913 F.2d at 256

(taking as evidence of age discrimination employer's refusal to honor employee's request to be considered for any job opening when openings were available for which employee was qualified).

Moreover, Raytheon's suggestion that it "had no knowledge of Miller's interest" is—to put it charitably—unsupported by the evidence. The summary judgment evidence was that Miller exercised every option available to him to obtain another position at Raytheon. *See* Pl.'s MSJ Resp. Br. at 12-18. In the days and weeks immediately after his termination, Miller scrambled to stay on at Raytheon. Among his efforts was to reach out to Human Resources looking for help sorting through the process and contacting the right people. Miller 192:16-194:4/Pl.'s MSJ App. 43. He submitted his résumé for at least four positions before Raytheon locked him out. Miller Apr. 8, 2010 dec. ¶ 16. And he discussed his desire to stay on at Raytheon directly with Wilson, the very person designated to work with Miller when it came to issues surrounding the termination. When they met on March 27, 2008, Wilson learned that Miller was looking for another job at Raytheon and that Miller was willing to take jobs below his salary grade. *Id.* ¶ 18. These efforts came to nothing, and Human Resources proved decidedly unhelpful. But for Raytheon to claim now that it "had no knowledge" of Miller's interest further undermines the credibility of Raytheon's various explanations.

Even if it were true that Raytheon was unaware of Miller's interest, there is substantial evidence indicating that Raytheon routinely places individuals in positions for which they have not applied. *See, e.g.,* Miller Apr. 8, 2010 dec. ¶ 12. Miller will adduce additional evidence at trial that Raytheon's supposed application requirement is nothing more than an *ad hoc* justification used to deny employment to individuals like Miller. On the contrary, Raytheon's preferred practice is to scour "every corner of the earth within [its] business" to locate positions for employees impacted by a RIF. Anderson depo. 71:10-16/Pl.'s MSJ App. at 350. In this

light, there is nothing to support the requirement that Raytheon now proposes that evidence of available positions is *only* relevant if Miller, who was already locked out of Raytheon's internal system, "applied" for those positions. *Cf. McCullough v. Houston County, TX*, 297 Fed. Appx. 282, 287 (5th Cir. 2008)(holding that the plaintiff failed to support of *prima facie* case of discrimination where employee "conced[ed] that she neither applied for nor was interested in a position"); *Norris*, 913 F.2d at 256 (taking as evidence of discrimination employer's refusal to consider employee for placement following her request to be considered "for any job opening" when company policy provided for recall of eligible employees after RIFs).

Raytheon does not stop with its mischaracterization of Miller's claims but goes on to make the strange argument that Miller failed to put Raytheon on notice of his intent to rely on evidence of available positions. Def.'s Mot. in Limine at 6. From day one, Miller's allegation has been that Raytheon "repeatedly refused to consider ..." Miller for other positions within the company. Pl.'s Orig. Compl. ¶ 16. Early on, he disclosed his intent to rely on "documents, electronically stored information, and tangible things" produced by Raytheon in discovery. Pl.'s Fed. R. Civ. P. 26(a)(1) disclosures at 4. His written discovery included requests for documents concerning positions open during the time period, in response to which *Raytheon* produced more than a dozen job requisitions within Miller's area of expertise. Miller then examined multiple Raytheon witnesses in depositions—from Vivek Kamath and Lisa Crump to Loretta Sweeney and Doug Hagedorn—concerning these job requisitions. And his summary judgment argument and evidence contained multiple references to these open positions.

Given the prominent role that evidence of Raytheon's refusal to consider Miller for available positions has played, it is difficult to see where Raytheon's complaint lies. Essentially, Raytheon's notional complaint is that Miller did not identify job requisitions *to which he did not have access* outside of discovery and that were *wholly within Raytheon's* possession. Raytheon

has not explained how exactly Miller failed to identify this information, and its argument is an overly formalistic reading of Federal Rules 26 and 37 that should be easily dispensed with.[1]

### D. The age impact of Raytheon's RIF decision-making is highly probative; Lyells was one among several who implemented the age-biased RIF process

Raytheon advances a straw man in attempting to discard Miller's evidence of the overall age impact of the March 2008 RIF on SAS's workforce. It introduces the specter of a series of mini-trials over the termination of other employees. Far from requiring separate mini-trials, the parties need not go into the underlying reason for the termination of 11 employees over 40 years of age, as compared to only two who were not yet 40, in the March 2008 RIF. Pl.'s MSJ Resp. Br. at 10-11. Instead, as the Court correctly assessed, the jury can properly conclude from this statistical evidence that Raytheon intended to discriminate in terminating Miller. Mem. Op. and Order at 11-12. As other courts have noted, evidence of the rate of termination of older employees relative to younger employees is relevant to a plaintiff's showing of pretext. *See Hollander v. America Cyanamid Co.*, 895 F.2d 80, 84 (2d Cir. 1990)(commenting that it is "well-settled" that individual disparate treatment plaintiff's may use statistical evidence to show pretext); *Diaz v. AT&T*, 752 F.2d 1356, 1362-63 (9th 1985)(noting that "[s]tatistical evidence is unquestionably relevant" in disparate treatment cases); *Suboh v. BellSouth Bus. Systems, Inc.*, Civ. A. No. 1:03-cv-0996, 2004 WL 5550100, *4 (N.D. Ga. Nov. 17, 2004); *Mitchell v. Fishbein, et al.*, 227 F.R.D. 239, 249 (S.D.N.Y. 2005); *Garcia v. Courtesy Ford, Inc.*, No. C06-

---

[1] Miller notes that Raytheon's own Federal Rule 26(a)(1) disclosures, which were never supplemented, contain no mention of significant portions of the evidence that Defendant apparently intends to offer at trial. Absent from Defendant's initial disclosures are the names Vivek Kamath, Loretta Sweeney, Lisa Crump, and Gary LaMonte, each of whom Raytheon has listed as expected or potential trial witnesses. *Compare* Def.'s FRCP 26(a)(1) initial disclosures *with* Def.'s FRCP 26(a)(3) pretrial disclosures. Similarly, its disclosure of documentary evidence did not include *any* evidence of the reason(s) for Miller's non-selection for (1) the open ISRS lead supply chain manager position in which it placed 34-year-old Michael Rynbrandt, (2) the MPM position for which Crump rejected Miller because, in Kamath's words, "Miller [was] not an option." If Raytheon insists on the exclusion of Miller's evidence under Fed. R. Civ. P. 26(a)(1) and 37(c)(1), Miller asks that the Court similarly exclude Raytheon's evidence that was not "disclosed" until its recent pretrial disclosures.

855RSL, 2007 WL 1430196, *3 (W.D. Wash. May 10, 2007); *see also Guzzo v. Queen of Angels School*, Civ. A. No. 05-933, 2007 WL 712122, *4 (W.D. Pa. Mar. 7, 2007)(noting the striking comparisons between two RIF'd, both in their 50s, and younger individuals not selected for termination; concluding that this evidence alone defeated summary judgment). The Fifth Circuit, like these other courts, has recognized that a disproportionate age impact can support an inference of age discrimination. *See Uffelman*, 863 F.2d at 408.

E. **Miller's testimony concerning his pension benefits is probative of his damages**

With little explanation and even less supporting authority, Raytheon asks the Court to exclude any non-expert evidence or argument concerning Miller's pension benefits. Yet it offers no explanation as to why Miller or other lay witnesses cannot testify concerning the pension benefits. In response, Miller notes that he does not intend to call Meihn to testify about Miller's pension. *See* Pl.'s Witness List at 2 (Doc. 75). He also notes that evidence of his compensation and pension benefits *may* be relevant to his age discrimination claims. *See Uffelman*, 863 F.2d at 408 (affirming jury finding of age discrimination where employer terminated 60-year old employee nine months short of his pension vesting and noting that cost savings was one of the main purposes of the reorganization). Here, where Raytheon is claiming budgetary problems as the justification for Miller's discharge, the jury should consider whether Raytheon used the salary and pension status of older employees as proxies for age discrimination.

F. **Evidence concerning other employees impacted by the March 2008 RIF is additional evidence of Raytheon's discriminatory intent**

The next topic in Raytheon's *limine* motion concerns the circumstances surrounding the termination of three other SCM employees in their 50s whom Raytheon terminated in 2008. Raytheon goes so far as to suggest that the coincidence of these terminations—either simultaneous to Miller's termination or following it by a few short months—has "zero probative value". It concedes, however, that testimony "on" Barham, who was the other unfortunate

member of the "Special Projects" decisional unit, is admissible. If that is so, there is no valid rationale for excluding comparable testimony "on" Fine, who was terminated in the March 2008 RIF along with Miller and Barham. Since Miller does not intend to call Barham, Fine, or Paquee (*see* Pl.'s Witness List (Doc. No. 75)), Raytheon's actual compliant with this evidence is unclear. This evidence is probative of Raytheon's discriminatory intent, and the Court should deny Raytheon's sixth *limine* issue. See *Uffelman*, 863 F.2d at 408 (noting plaintiff's evidence that other older employees were terminated at the same time as the plaintiff).

### G. Raytheon erroneously seeks to prevent the jury from considering Miller's damages

Inviting error, Raytheon next argues that the jury should not hear *any* evidence of Miller's damages. The sweep of its proposed *limine* issue overreaches to the extreme. Def.'s Mot. in Limine at 10 ("... any evidence ... concerning the amount of monetary damages ...." and "no evidence, reference or argument concerning the amount of monetary damages, or whether to award damages, or who pays damages is appropriate and should not be permitted")(emphasis added). Swept up in this blanket exclusionary request would be legal and equitable damages, without distinction as to the nature or source of the remedy.

The Fifth Circuit Court of Appeals and its Pattern Jury Charge Advisory Committee have taken a more considered (and proper) approach to damages in employment discrimination suits than that which Raytheon proposes. According to the Advisory Committee, legal remedies under the ADEA include "back pay, front pay, and liquidated damages." "Committee Introduction to the Age Discrimination in Employment Act," Fifth Circuit Labor & Empl. Pattern Jury Charge [2009 ed.] at 53. From there, the pattern charge instructs that the *jury* should consider "the amounts the evidence shows Plaintiff would have earned had [he] [remained a Raytheon employee], including fringe benefits." *Id.* § 11.9.3 at 58. In other words, the Fifth Circuit's pattern charge includes an instruction and jury question on *back pay*. This is consistent

with long-standing practice in federal age discrimination cases in this circuit. *See, e.g. Palasota v. Haggar Clothing Co.*, 499 F3d 474, 486 (5th Cir. 2007)(affirming jury award of back pay).

Raytheon mistakenly insists that Miller's damages evidence be excluded outright. A blanket exclusion of such evidence captures not only damages arising under the ADEA (*i.e.*, back pay, front pay, and liquidated damages), but damages allowed for under the Texas Labor Code. Damages under the TCHRA are a matter for the jury. *See* TEX. PATTERN JURY CHARGE – BUS., CONSUMER, INS. & EMPL. [2008 ed.], PJC § 115.30.[2] Moreover, even if Texas courts were to follow Raytheon's proposal that the court address the amount of back pay and front pay, Miller's claims for compensatory and punitive damages nevertheless present clear-cut jury issues.

Even on the issue of front pay Raytheon is mistaken. On this question, once the court determines that reinstatement is infeasible and, by extension, that front pay is appropriate, the "*jury* should determine the amount of damages." *Hansard*, 865 F.2d at 1470 (5th 1989)(emphasis added). Whether or not termed an advisory verdict, it is clear that juries in the Fifth Circuit are competent to consider a plaintiff's claims for front pay and to determine the amount of future damages. *See Julian v. City of Houston, TX*, 314 F.3d 721, 728 (5th Cir. 2002). Thus, Miller respectfully reiterates his request that the Court submit a question to the jury as to the amount of Miller's front pay and benefits. *See* Agreed Charge at 35, 37 (Doc. No. 70).

### III.   CONCLUSION

Raytheon's motion *in limine* amounts to a request to exclude evidence harmful under the guise of raising admissibility issues. Because each of the categories included in the motion is

---

[2] Texas's pattern jury instruction on damages under the TCHRA includes definitions of not only "back pay" but also past and future compensatory damages. *See* "Question and Instruction on Unlawful Employment Practices Damages," TEX. PATTERN JURY CHARGE – BUS., CONSUMER, INS. & EMPL. [2008 ed.], PJC § 115.30. As the accompanying comments to this instruction note, this instruction should be used when an unlawful employment practice under Tex. Lab. Code § 21.051(1) such as age discrimination has been found.

**Plaintiff's Response and Brief in Opposition to Defendant's Motion in Limine – Page 12**

probative of one or more material issues and because the probative value of this evidence substantially outweighs any of the considerations of Federal Rule of Evidence 403, Miller respectfully urges the Court to reject Raytheon's efforts to bar the jury from considering this evidence in determining the ultimate issue of Raytheon's discriminatory intent. Raytheon's motion *in limine* should be denied.

DATED: June 25, 2010

Respectfully submitted,

GILLESPIE, ROZEN & WATSKY P.C.
3402 Oak Grove Avenue, Suite 200
Dallas, Texas 75204
Tel: (214) 720-2009
Fax: (214) 720-2291

/s/ *James D. Sanford*
Hal K. Gillespie
*Attorney-in-Charge*
Texas Bar No. 07925500
hkg@grwlawfirm.com
Yona Rozen
Texas Bar No. 17958500
yrozen@grwlawfirm.com
Edith K. Thomas
Texas Bar No. 24060717
ethomas@grwlawfirm.com
James D. Sanford
Texas Bar No. 24051289
jsanford@grwlawfirm.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

The undersigned certifies that on June 25, 2010 he electronically submitted the foregoing document to the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court. The electronic case files system sent a "Notice of Electronic Filing" to the following individuals, who have consented in writing to accept this Notice as service of this document by electronic means: Michael P. Maslanka, Esq., and Buena Vista Lyons, Esq., of FORD & HARRISON LLP, attorneys for Defendant Raytheon Company.

/s/ *James D. Sanford*
One of Plaintiff's Counsel