## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **RICHARD MILLER** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 3:09-cv-0440-O** |
| | § | **ECF** |
| **RAYTHEON COMPANY** | § | |
| | § | |
| **Defendant.** | § | |

## DEFENDANT RAYTHEON COMPANY'S
## MOTION FOR JUDGMENT AS A MATTER OF LAW;
## OR, IN THE ALTERNATIVE, REMITTITUR;
## OR, IN THE ALTERNATIVE, A NEW TRIAL, AND SUPPORTING BRIEF

Respectfully submitted,

By:    _/s/ Michael P. Maslanka_

**Michael P.  Maslanka**
State Bar No. 13148800
mmaslanka@fordharrison.com
**Buena Vista Lyons**
State Bar No. 00797630
vlyons@fordharrison.com

**FORD & HARRISON LLP**
1601 Elm Street, Suite 4450
Dallas, Texas  75201
(214) 256-4700
(214) 256-4701 Facsimile

**ATTORNEYS FOR DEFENDANT
RAYTHEON COMPANY**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................... ii-iv

I.  SUMMARY OF ARGUMENT

II.  SUMMARY OF LAW ........................................................................................ 2

    A.  No age discrimination as to the transfer ........................................................ 6

    B.  No age discrimination by Lyells towards Miller when Lyells supervised him .............................................................................................................. 6

    C.  No age discrimination on the decision to conduct a RIF ..................................... 7

    D.  No age discrimination in the selection of Miller ................................................ 8

    E.  No age discrimination, post-layoff .................................................................. 9

III.  ARGUMENT AND AUTHORITIES ................................................................ 10

    A.  There is no conflict in substantial evidence .................................................... 12

    B.  Even if there is a "substantial conflict" as to discrimination, there is none as to willfulness, and no liquidated damages should be awarded ..................... 14

    C.  Award of past pension benefits is an equitable remedy to be decided by the court, and should be set aside ................................................................ 15

    D.  Award of punitive damages is unsupported by the evidence, and should be set aside ................................................................................................ 16

    E.  Award of mental anguish damages is unsupported by the evidence, and should be set aside .................................................................................... 18

    F.  In the alternative, the Court should remit the mental anguish and punitive damage award to the statutory cap of the TCHRA ........................................... 19

    G.  Miller cannot reap a double recovery of both punitive and liquidated damages .................................................................................................... 19

    H.  In the alternative, the Court should grant Raytheon a new trial ........................ 20

## TABLE OF AUTHORITIES

## FEDERAL CASES

*Amezquita v. Ben. Tex., Inc.*, 264 Fed. App. 37 (5th Cir. 2008) ..........................................12

*Anthony, et al. v. Chevron USA, Inc.*, 284 F.3d 578 (5th Cir. 2002) ....................................2

*Bell v. Raytheon Co.*, 2009 U.S. Dist. LEXIS 67016 (N.D. Tex. July 31, 2009) ...........3, 4

*Bourdais v. City of New Orleans, et al.*, 2005 U.S. Dist. LEXIS 41047 (E.D. La.
   April 29, 2005) ....................................................................................................15

*Brady v. Fort Bend County*, 145 F.3d 691 (5th Cir. 1998) ................................................18

*Burciaga v. West*, 996 F. Supp. 628 (W.D. Tex. 1999) ....................................................10

*Carberry v. Monarch Marking Sys., Inc.*, 30 Fed. Appx. 389 ..........................................15

*Chapman v. Dallas Morning News, L.P., et al.*, 2008 U.S. Dist. LEXIS 42191
   (N.D. Tex. May 27, 2008) ....................................................................................9

*Davis v. Farmers Insurance Exch.*, 2010 U.S. App. LEXIS 7130 (5th Cir. April 6,
   2010) ..................................................................................................................13

*Dulin v. Dover Elevator, Inc.*, 1997 U.S. Dist. LEXIS 9860 (N.D. Miss. 1997),
   *aff'd*, 139 F.3d 898 (5th Cir. 1998) ....................................................................11

*EEOC. v. Texas Instruments*, 100 F.3d 1173 (5th Cir. 1996) ..........................................11

*Edwards v. Aaron Rents, Inc.*, 482 F. Supp. 2d 803 (W.D. Tex. 2006)............................19

*Flowers v. S. Regional Physician Services*, 247 F.3d 229 (5th Cir. 2001) ........................18

*Gross v. FBL Financial Services, Inc.*, _____ U.S. _____, 129 S. Ct. 2343
   (2009) ..................................................................................................................2

*Hansard v. Pepsi-Cola Bottling Corp.*, 865 F.2d 1461 (5th Cir. 1989)............................14

*Harden v. Caterpillar, Inc.*, 227 F.3d 268 (5th Cir. 2000) ................................................16

*Hines v. Grand Casino of Louisiana, L.L.C.*, 358 F. Supp. 2d 533 (W.D. La.
   2005) ..................................................................................................................19

*Hitt v. Connell*, 301 F.3d 240 (5th Cir. 2002)..................................................................18

*Horak v. Glazer's Wholesale Drug Co.*, 2007 U.S. App. LEXIS 5222 (5th Cir. 2007) ........................................................................................................................10

*Jenkins v. Ball Corp.*, 140 Fed. Appx. 519 (5th Cir. 2005) ........................................10

*Julian v. City of Houston, Texas*, 314 F.3d 721 (5th Cir. 2002) ........................................15

*Lehman v. Leichliter*, 2008 U.S. App. LEXIS 11268 (5th Cir. 2008) ........................12

*Marks v. Kare II*, 84 F.3d 1074 (8th Cir. 1996)........................................................15

*Martin v. Bagland, Inc.*, 403 F. Supp. 2d 978 (S.D. Tex. 2006), *aff'd*, 2006 WL 1308017 (5th Cir. 2006)........................................................................................10

*McCabe v. City of Minneapolis*, 2005 U.S. Dist. LEXIS 27930 (D.Minn. Nov. 2, 2005) ....................................................................................................................8

*McMartin v. Officemax, Inc.*, 2009 U.S. Dist. LEXIS 67469 (N.D. Tex. July 27, 2009) ....................................................................................................................3

*Moore v. Eli Lilly*, 990 F.2d 812 (5th Cir.), *cert. denied*, 510 U.S. 976 (1993) ................11

*Moss v. BMC Software, Inc.*, 610 F.3d 917 (5th Cir. 2010) ........................................11

*Norton v. Houston Indus., Inc., et al.*, 106 Fed. Appx. 209 (5th Cir. 2004) ........................9

*O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996)........................12

*Reynolds v. Octel Communications Corp.*, 924 F. Supp. 743 (N.D. Tex. 1995).........19, 20

*Rodgers v. Fisher Body Division, General Motors Corp.*, 739 F.2d 1102 (6th Cir. 1984), *cert. denied*, 470 U.S. 1054, 105 S. Ct. 1759 (1985)........................................16

*Roger v. Exxon Corp.*, 27 F. Supp. 2d 679 (E.D La. 1998), *aff'd*, 198 F.2d 243 (5th Cir. 1996)........................................................................................................10

*Russell v. McKinney Hospital Venture*, 235 F.3d 219 (5th Cir. 2006) ........................14

*Skalka, et al. v. Fernald Environmental Restoration Management Corp., et al.*, 178 F.3d 414 (6th Cir.1999) ............................................................................15

*Smith v. Lowe's Home Ctrs., Inc.*, 2005 U.S. Dist. LEXIS 12812 (W.D. Tex. June 29, 2005) ..............................................................................................................18

*Smith v. Transworld Drilling Co.*, 773 F.2d 610 (5th Cir. 1985) ........................20

*Smith v. Xerox Corp.*, 602 F.3d 320 (5th Cir. 2010)..........................................................16

*Stingley v. Den-Mar, Inc.*, 347 Fed. Appx. 14 (5th Cir. 2005) ............................................14

*Utley v. MCI, Inc.*, 2008 U.S. Dist. LEXIS 23488 (N.D. Tex. 2008) .................................11

*Vadie v. Mississippi State University*, 218 F.3d 365 (5th Cir. 2000), *cert. denied*,
    531 U.S. 1113 (2001).......................................................................................................19

*Walther v. Lone Star Gas Co.*, 952 F.2d 119 (5th Cir. 1992) .............................................15

## STATE CASES

*Baker-Hughes Oilfield Operations v. Williams*, 2010 Tex. App. LEXIS 4375
    (Tex.App.—Houston [1st Dist.] June 10, 2010)................................................................4

*Caballero v. Central Power and Light Co.*, 858 S.W.2d 359 (Tex. 1993).........................3

*Cory v. Brady Independent School District*, 2009 Tex. App. LEXIS 7034
    (Tex.App.—Austin August 31, 2009, *no pet.*)...............................................................3

*Orion Marketing Group, Inc. v. Morris*, 2008 Tex. App. LEXIS 1192
    (Tex.App.—San Antonio, February 20, 2008) ...............................................................17

*Southwestern Bell Telephone Co. v. Garza*, 164 S.W.3d 607 (Tex. 2004)......................17

*Union Pac. R.R. Co. v. Loa*, 153 S.W.3d 162 (Tex.App.—El Paso [8th Dist.]
    2004) ...............................................................................................................................19

*Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735 (Tex. 2003) ....................................3

## FEDERAL STATUTES

29 U.S.C. § 623(a)(1)...........................................................................................................3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **RICHARD MILLER** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 3:09-cv-0440** |
| | § | **ECF** |
| **RAYTHEON COMPANY** | § | |
| | § | |
| **Defendant.** | § | |

### DEFENDANT RAYTHEON COMPANY'S
### MOTION FOR JUDGMENT AS A MATTER OF THE LAW;
### OR, IN THE ALTERNATIVE, REMITTITUR;
### OR, IN THE ALTERNATIVE, A NEW TRIAL, AND SUPPORTING BRIEF

Defendant Raytheon Company ("Raytheon") files this its Motion for Judgment as A Matter of the Law; or, In the Alternative, Remittitur; or, In the Alternative, A New Trial ("JMOL" and/or "Motion")[1], and would respectfully show the Court as follows

### I.

### SUMMARY OF ARGUMENT

The jury was asked one key liability question:  was Miller terminated because of his age?  They answered "yes," but the trial testimony was all to the contrary.  Miller testified that he was not transferred because of his age.  He testified that Robert Lyells ("Lyells") did not discriminate against him because of his age when they worked together.  Raytheon's legitimate, non-discriminatory reasons—that it needed to conduct a reduction-in-force (RIF), that budget savings could be realized by eliminating Miller's position and his job could be easily absorbed by others—were never refuted at trial by Miller.  Rather then seeking to establish pretext as to

---

[1]  This Motion is submitted based only on the trial transcript of Plaintiff Richard Miller's ("Miller") cross-examination.  The full transcript of the trial was unavailable as of the deadline set by the Court for filing in its August 27, 2010 Order (*see* Docket 118).

these reasons, Miller illogically offered testimony on what occurred to him post-RIF in order to support his argument that he was laid-off because of age.  The post-RIF events had no connection to or influence upon the question before the jury, and thus cannot be used to support its verdict.  The evidence, as demonstrated in this Motion, was insufficient to support the verdict, and JMOL is appropriate.

## II.

## SUMMARY OF LAW

The party opposing the JMOL must establish a conflict in "substantial evidence" in order to defeat the Motion.  In other words, the evidence must be of such quality and sufficiency to establish that a jury based its verdict on the facts and reasonable inference; not upon speculation and conjecture.  *Anthony, et al. v. Chevron USA, Inc.*, 284 F.3d 578 (5th Cir. 2002).  Further, the facts at trial must be filtered through the applicable substantive law.

Here, as to Miller's claim under the Age Discrimination in Employment Act ("ADEA"), the facts at trial must be filtered through *Gross v. FBL Financial Services, Inc.*, _____ U.S. _____, 129 S. Ct. 2343 (2009).  In *Gross*, the United States Supreme Court held that an age discrimination plaintiff must "prove, by a preponderance of the evidence, that age was the 'but for' cause of the challenged adverse employment action."  *Gross*, 129 S. Ct. at 2352.  In other words, that age was "the" reason for the action, not one of many.

Miller argues that the *Gross* standard is inapplicable in an age discrimination claim under the Texas Commission on Human Rights Act ("TCHRA"), and that a "motivating factor" test applies.  This is incorrect.  Given that the statutory language of the ADEA and the TCHRA is *identical*, in that they both prohibit an unlawful employment action made "because of age," it

is highly probable that the Supreme Court of Texas, in answering this question, would follow the Supreme Court's *Gross* decision.

| TCHRA | ADEA |
|---|---|
| An employer commits an unlawful employment practice if **because of**...age the employer...discharges an individual....[2] | It shall be unlawful for an employer to...discharge any individual...**because of** such individual's age.[3] |

The likelihood that the Texas Supreme Court will apply the *Gross* analysis is even more probable in light of the fact that Texas courts have an expressly stated policy of looking to, coordinating and conforming with federal authority under the ADEA in applying the TCHRA's provisions against age discrimination. *McMartin v. Officemax, Inc.*, 2009 U.S. Dist. LEXIS 67469 (N.D. Tex. July 27, 2009); *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) ("The Legislature intended to correlate state law with federal law in employment discrimination cases when it enacted the TCHRA."); *Caballero v. Central Power and Light Co.*, 858 S.W.2d 359, 361 (Tex. 1993) (a stated purpose of the TCHRA is to coordinate and conform with federal employment discrimination laws, including the ADEA).

For this reason, most courts analyzing the appropriate causation standard under the TCHRA post-*Gross* have held that the "but-for" causation standard also applies to TCHRA claims. *See Bell v. Raytheon Co.*, 2009 U.S. Dist. LEXIS 67016 at *12 (N.D. Tex. July 31, 2009) (applying but for causation in an age discrimination claim under TCHRA); *McMartin*, 2009 WL at *5 (same); *Cory v. Brady Indep. School Dist.*, 2009 Tex. App. LEXIS 7034, *1 n. 1 (Tex.App.—Austin August 31, 2009, *no pet.*) ("There should be no practical distinction in our analysis here [of Plaintiff's ADEA claim], as we turn to analogous federal law for guidance in claims under the TCHRA.").

---

[2] TEX. LABOR CODE § 21.051.
[3] 29 U.S.C. § 623(a)(1).

At least one District Court in the Northern District of Texas has properly reached this conclusion, in light of *Gross*. *See e.g., Bell*, 2009 U.S. Dist. LEXIS at *12 (applying but-for causation in an age discrimination claim under TCHRA). While the Texas Supreme Court has not yet addressed the instant issue, in light of the identical language contained in the TCHRA and the ADEA, the practice of looking to federal precedent in interpreting the TCHRA, and the recent decisions from other courts on this issue, it is likely that the Texas Supreme Court would hold that the requirement under *Gross* that age be the "but-for" cause of the adverse employment action applies equally to an age discrimination claim brought under the TCHRA.

Even if *Gross* is inapplicable to the TCHRA, the plaintiff's burden under the TCHRA is still a high one. A plaintiff must establish that the reasons given by the employer for the adverse employment action are false *and* that the prohibited factor (here, age) is the real reason for the decision. As recently as June 10, 2010, a Texas Court of Appeals reiterated this as the meaning of "motivating factor," and thus the standard by which a jury verdict must be measured relying upon the Texas Supreme Court's decision. *Baker-Hughes Oilfield Operations v. Williams*, 2010 Tex.App. LEXIS 4375 (Tex.App.—Houston [1[st] Dist.] June 10, 2010).

Thus, under either *Gross* or *Canchola*, age must be *the* reason for the decision. The trial testimony made abundantly clear that there is no substantial conflict in the evidence. Rather, it is clear that Miller was terminated from employment for legitimate, non-discriminatory reasons, not because of his age.

## SUMMARY OF TRIAL TESTIMONY

The following is undisputed testimony from trial:

√    Miller was transferred to the Raytheon Space and Airborne Systems-Supply Chain Management Operations Group (SAS-SCM) in 2006. He testified at trial that his transfer had nothing to do with his age, and that he was replaced by an employee three years older than him. (Def.'s App. 12-14).

√    Miller agreed that a person of his skill sets was needed in the position to which he was transferred. (Def.'s App. 12, 34).

√    Miller testified that Lyells (except for the RIF decision) *never* discriminated against him because of his age or evidenced age animus towards him, and treated him in a courteous and professional manner. No age discrimination comments were made by Lyells or any other manager at Raytheon. (Def.'s App. 14-15).

√    SAS-SCM conducted a reduction-in-force (RIF) because of a budgetary shortfall.

√    Lyells selected Miller to be included in the RIF because: (a) as of April 2008, Miller's compensation would no longer be charged to the PRISM budget, but rather would be charged directly to Lyells' budget (Def.'s App. 33); and (b) his position could be easily absorbed by others. (Def.'s App. 47). No evidence was introduced to controvert these assertions.

√    After the RIF, Miller was not replaced. Rather, his position was absorbed by three other employees, all of whom were over 40, two of whom were *older* than Miller. (Def.'s App. 47).

√    Miller testified at trial that he had no evidence that any other laid-off employee was treated differently or more favorably than him in Raytheon's efforts to place employees in other positions. (Def.'s App. 9-11).

√    Miller testified at trial that he was told that he could apply for other positions; that he knew other positions were available; and, that he consciously decided not to apply for those positions. (Def.'s App. 3-5, 6-8).

So, where is the age discrimination? Raytheon looks at the path leading to the RIF.

*A. No age discrimination as to the transfer*

Miller began working for Raytheon in 1999, when Raytheon acquired a portion of Texas Instruments where Miller was employed. In October 2006, Miller reported to Dina Hyde, the Vice President of SAS-SCM ("Hyde"). Hyde decided to transfer Miller from his managerial role in SAS-SCM's ISRS subdepartment to the SAS-SCM Operations subdepartment, in order to oversee the development and reports for Raytheon's new Enterprise Resource Planning System, also known as PRISM. Miller testified that his age did not play a role in his transfer. (Def.'s App. 13).

*B. No age discrimination by Lyells towards Miller when Lyells supervised him*

Miller worked in the Raytheon facility in Dallas, Texas, performing his PRISM duties. Lyells worked in the Raytheon facility in El Segundo, California, overseeing all SAS-SCM operations. At trial, Miller testified that Lyells treated him in a business-like and professional manner, and acted respectfully towards him. (Def.'s App. 14-15). Lyells is older than Miller. At the time of Miller's layoff, Miller was 53; Lyells was 55.

At trial, Miller testified that he had numerous interchanges with Lyells, and testified as follows:

Q:  Mr. Lyells treated you in a business-like way?

A:  Yes.

Q:  He treated you professionally?

A:  Yes.

Q:  He treated you with respect?

A:  Yes. (Def.'s App. 14).

Miller then went on to testify at trial as to the significance of these interactions.

Q:      And, I know we have a disagreement about your termination, sir, but before the termination, you never believed or thought Lyells ever did anything to discriminate against you because of your age; did you?

A:      Not that I noticed.

Q:      Well, in your day-to-day relationships with him, it can even be by email or by over the phone; correct?

A:      Correct.

Q:      And, during all the interchanges you had with him, you never believed that he was discriminating against you because of your age; isn't that correct?

A:      That's correct.  (Def.'s App. 14-15).

*C. No age discrimination on the decision to conduct a RIF*

Vivek Kamath ("Kamath") replaced Hyde on an acting basis as Vice President of SAS-SCM.  (Def.'s App. 16).  Lyells and Kamath testified at trial that there would be an overall budgetary shortfall in SAS-SCM of approximately $140,000,000.  Each of the senior managers and directors of the business groups in SAS-SCM, including Lyells, was directed by Kamath to cut their budget by 15%.

Lyells testified, and Miller corroborated his testimony at trial, that Raytheon's standard operating procedure is to make substantial efforts to close a budgetary gap through non-personnel cost-savings, including cuts in travel, training and contract labor.  A RIF is only effectuated as a last resort.  (Def.'s App. 17-18).  And, a RIF, as Miller testified to at trial, is a legitimate way to close a budget gap:

Q:      You have a gap in the coming year; you're not going to be able to meet your budget; and, as a result, you decide to lay people off.  Isn't that a common business practice?

A:      I certainly hope it's not.  I think you understand why you have the gap, and you resolve the problem, and it doesn't necessarily have to be people that are laid-off to resolve the problem, that budget problem.

Q:      But, it could be people; correct?

A:     Depending on the situation, it could be; yes.  (<u>Def.'s App. 18-19</u>).

And, Miller recognized these are simply facts of business life:

Q:     Budget shortfalls happen?

A:     Yes, they do; yes, they do.

Q:     And, lay-offs happen?

A:     Yes, they do.  Unfortunately, they do; yes.  (<u>Def.'s App. 35</u>).

### D.  *No age discrimination in the selection of Miller*

Lyells testified at trial that Miller and Kenneth Barham ("Barham") were placed in a special projects decisional unit.  Why?  He testified at trial—without contradiction—that they were performing stand-alone projects, and the projects were performed only by Miller or by Barham.  Lyells testified in detail that the work being performed by Miller was unique from the other parts of his organization.  Miller agreed—his position was a unique one, developing reports and training for the launch of the PRISM project.  Only he did these tasks.  (<u>Def.'s App. 26, 34</u>).  Other decisional units, created from Lyells' departments, were cohesive in nature, with employees performing essentially the same tasks, which had no overlap or interchange with Miller and Barham.  (<u>Def.'s App. 47</u>).

Because of the nature of Miller's job, Lyells, exercising his business judgment, testified that Miller's job was not a critical one and thus easily absorbed by other employees.  This is a legitimate, non-discriminatory reason.  *McCabe v. City of Minneapolis*, 2005 U.S. Dist. LEXIS 27930 at *11 (D.Minn. Nov. 2, 2005) (elimination of a position to reduce budget where other administrative positions could fully absorb the duties was a legitimate, non-discriminatory reason).

Further, Miller acknowledged that starting in April 2008, his salary would be charged to Lyells' budget as a direct cost.  (Def.'s App. 33).  This, too, is a legitimate, non-discriminatory reason.  *Norton v. Houston Indus., Inc., et al.*, 106 Fed.Appx. 209, 211 (5th Cir. 2004) (plaintiff failed to rebut defendant's legitimate, non-discriminatory reason for eliminating her position, which was to cut costs); *Chapman v. Dallas Morning News, L.P., et al.*, 2008 U.S. Dist. LEXIS 42191 at *22 (N.D. Tex. May 27, 2008).

And, further Lyells testified at trial—without contradiction—that Linda Keenan's and Lynn Mueller's costs would continue to be charged to a separate PRISM budget outside of his SAS-SCM Operations group.  In other words, laying them off, as opposed to laying-off Miller, would do nothing to close the budget gap.

*E. No age discrimination, post-layoff*

At trial, the testimony as to the ages of those who absorbed Miller's duties, but also retained their regular duties, was undisputed:  Linda Keenan (46); Lynn Mueller (54); and, Phil Smith (54).  (Def.'s App. 47).

At trial, Miller offered evidence of other positions that he could fill.  However, that is not the issue.  The issue is whether Miller was treated as other employees were treated.  Miller testified that he was told that he would be considered for open positions if he applied for them. (Def.'s App. 37-38).  Significantly, Miller testified at trial that he had *no evidence* that others were treated differently than him.

He testified that he was not discriminated against:

Q:     Do you know any other employee who was laid-off, but who was not required to fill-out an application for a different position within Raytheon?

A:     During this lay-off or any time or—

Q:     Well, let's take it during this lay-off.

A:      No, I don't.  (<u>Def.'s App. 10-11</u>).

Similarly, on cross-examination, Miller testified as follows:

Q:      Now, no one told you that a long-term employee such as yourself was exempted from applying for a job; did they?

A:      No.

Q:      Then, during the lay-off, no other employee was laid-off and exempted from filling—filling out a job application for another opportunity; were they?

A:      I don't have any knowledge of that.  (<u>Def.'s App. 9</u>).

Miller testified that positions were open that he was qualified for, but which he *consciously* declined to submit an application for.  (<u>Def.'s App. 3-5, 6-8</u>).  His decision is not evidence of Raytheon discriminating against him.

## III.

## <u>ARGUMENT AND AUTHORITIES</u>

The JMOL should be granted because on these facts, there is no conflict in substantial evidence and the law warrants JMOL.  There is no evidence that age was the reason for Miller's layoff, as required by *Gross*; nor, that Raytheon's reasons were false *and* that age was the real reason, as required under the TCHRA.  (Assuming *Gross* is inapplicable to the TCHRA.)

*First*, there is no dispute that this was a RIF.  In RIF cases, the Fifth Circuit has consistently held that there is no employer liability if a plaintiff's job responsibilities are absorbed by other employees within the protected age group.  *Horak v. Glazer's Wholesale Drug Co.*, 2007 U.S. App. LEXIS 5222 (5th Cir. 2007); *Jenkins v. Ball Corp.*, 140 Fed.Appx. 519, 526 (5th Cir. 2005); *Burciaga v. West*, 996 F.Supp. 628, 638 (W.D. Tex. 1999); *Martin v. Bagland, Inc.*, 403 F.Supp.2d 978, 583 (S.D. Tex. 2006), *aff'd*, 2006 WL 1308017 (5th Cir. 2006); *Roger v. Exxon Corp.*, 27 F.Supp.2d 679, 682 (E.D La. 1998), *aff'd*, 198 F.2d 243 (5th

Cir. 1996); *Dulin v. Dover Elevator, Inc.*, 1997 U.S. Dist. LEXIS 9860 (N.D. Miss. 1997), *aff'd*, 139 F.3d 898 (5th Cir. 1998). Here, Miller's job duties were absorbed by three other employees, all of whom were over 40; two of whom were older than Miller. (Def.'s App. 47).

*Second*, a RIF is a legitimate, non-discriminatory reason for terminating an employee. The fact that an employee may have had a good record prior to the RIF is not evidence of age discrimination. *Utley v. MCI, Inc.*, 2008 U.S. Dist. LEXIS 23488 at 123 (N.D. Tex. 2008) ("it is undisputed that MCI made a business decision to conduct a series of RIFs throughout 2004. Given the fact that a company is often forced to terminate good employees in the context of a RIF, it is more difficult for a plaintiff to show the existence [of age discrimination] by pointing to their qualifications, experience and abilities.")

And, the Fifth Circuit has acknowledged that, if the law was otherwise, employers would lack the needed flexibility to conduct their operations. *EEOC. v. Texas Instruments*, 100 F.3d 1173 (5th Cir. 1996). The *Texas Instruments* court cites the Fifth Circuit's earlier opinion in *Moore v. Eli Lilly*, 990 F.2d 812, 819 (5th Cir.), *cert. denied*, 510 U.S. 976 (1993):

> [The] ADEA was not created to address wrongful discharge simply because the terminated worker was over the age of forty. A discharge may well be unfair or even unlawful, and yet not be evidence of age bias under the ADEA.

Thus, the fact that Miller previously had an acceptable work history is insufficient to trump an employer's legitimate right to restructure its business. As recently as July 2, 2010, the Fifth Circuit reaffirmed as employer's right to do so, and cautioned that courts should not second-guess these business decisions by employer. *Moss v. BMC Software, Inc.*, 610 F.3d 917 (5th Cir. 2010).

*Third*, Miller offers no evidence that he was treated differently than any other employee, during or post-RIF. Whether Miller could have filled another job is not the relevant

legal point.  Rather, the relevant legal point is whether he was treated identically to other employees in filling job positions.  Here, he was.  He testified that he was.  He offers no evidence that he was treated differently than any one else.  This is not evidence of age discrimination.

Miller somehow seeks to construe not being hired into a different position as evidence that his layoff was the result of age discrimination.  It is not.

> (a)    The sole issue before the jury was whether Miller's layoff was because of his age.  That decision was made by Lyells, and thus it is his motivation that is relevant, not the motivation of others involved in deciding not to hire Miller in other positions, post-RIF.  Lyells testified—without contradiction—that he had *no role* in any hiring decisions as to Miller, post-RIF.

> (b)    Miller testified at trial that he knew jobs were open for which he could apply, and he decided not to.  (Def.'s App. 3-5, 6-8).  His decision is not evidence of age discrimination.  He was told by Lisa Crump of a job opening— that was similar to his previous position pre-2006 transfer—and decided not to apply for it.

This, too, is not evidence of age discrimination.  *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996).  Finally, the one job he applied for, among a number of applicants, was filled by a 51-year-old.  The Fifth Circuit, in similar circumstances in which there is no conflict in substantial evidence, has granted JMOLs.  *Stotter v. Univ. of Texas at San Antonio*, 369 Fed.Appx. 641, 643 (5th Cir. 2010); *Lehman v. Leichliter*, 2008 U.S. App. LEXIS 11268 (5th Cir. 2008); *Amezquita v. Ben. Tex., Inc.*, 264 Fed.Appx. 379, 385 (5th Cir. 2008).

*A.  There is no conflict in substantial evidence*

Because a RIF is a legitimate, non-discriminatory reason, and because Miller offers no evidence of discriminatory treatment, during or post-RIF, and because his job duties were absorbed by those within his protected age group, JMOL is appropriate.  Miller may argue that at trial he adduced evidence resulting in a substantial conflict because of three factors.

*First*, Lyells and Hyde plotted against him. He testified that his termination on March 13 must have been the result of Lyells and Hyde getting together and colluding to move him to Lyells' group. His evidence that they did? He was terminated on March 13, and therefore, *there must have been* some collusion. (Def.'s App. 15). This circular speculation does not raise a conflict in substantial evidence. *Davis v. Farmers Ins. Exch.*, 2010 U.S. App. LEXIS 7130 at *7 (5th Cir. April 6, 2010).

*Second*, Miller testified that he was given a "secret I." This refers to his wholly-subjective belief that he was given an "I" rating because of his age, in order to terminate him from Raytheon and keep him terminated. The following is undisputed from trial, from both Miller's and Lyells' testimony and documentary evidence. An "I" rating was given to Miller in December 2006; it is undisputed that the "I" rating was given *before* the budget shortfall was realized and the need for a RIF contemplated. (Def.'s App. 20, 45). A rating given *before* a RIF is even contemplated cannot possibly be evidence that it was given in order to terminate Miller in a RIF.

In any event, as Lyells testified to at trial—without contradiction—while performance was looked at for both Miller and Barham, it did not matter because Lyells decided to eliminate the entire decisional unit.

*Third*, Miller claims an inconsistency between Raytheon's post-RIF EEOC Position Statement and Raytheon's defense; namely, that Raytheon told the EEOC that Miller had not applied for any positions. This is the *only* variance pointed out. There is no variance between the reasons given in the EEOC Position Statement for why Raytheon conducted the RIF, and why it selected Miller, and Raytheon's trial testimony. The remainder of the Position Statement is 100% consistent with Raytheon's defense at trial. The Fifth Circuit has held that

only material variances are probative. *Stingley v. Den-Mar, Inc.*, 347 Fed.Appx. 14 (5th Cir. 2009). Similarly, the conflict in testimony on whether Allen Reid, Human Resources Director ("Reid"), sent Miller an email on job openings is not material to the liability question before the jury.

*B. Even if there is a "substantial conflict" as to discrimination, there is none as to willfulness, and no liquidated damages should be awarded*

The testimony at trial from Lyells, Kamath and Reid detailed extensively the steps taken by Raytheon to ensure RIF decisions that were fair, principled and fact-based. Raytheon did not rush to judgment in its decision-making. It did not act recklessly in how it made its RIF selections. Lyells conferred with human resources each step of the way, including training on how to conduct the RIF, and directions not to consider protected characteristics in making RIF decisions. (Def.'s App. 46). *Hansard v. Pepsi-Cola Bottling Corp.*, 865 F.2d 1461 (5th Cir. 1989) (willfulness finding appropriate only where defendant acted knowingly or recklessly).

Our case is markedly similar to *Russell v. McKinney Hospital Venture*, 235 F.3d 219 (5th Cir. 2006), where the court set aside a jury verdict finding willfulness. The court noted that a willfulness finding is not automatic upon a finding of discrimination and requires evidence of a different quality and degree. The *Russell* court held:

> [B]oth sides presented evidence supporting their respective positions. While the jury could quite reasonably find defendant violated the ADEA, we conclude that the same cannot be said for a willful violation. We do not find evidence in the record to support the jury's determination that defendant's conduct was such that it amounted to "reckless disregard."

The court then goes on to address what type of evidence would be sufficient. By way of example, the court held that a "smoking gun" memo regarding age or a decision to terminate an employee to prevent a pension from vesting would be sufficient. (By contrast, Miller's pension

had already vested.)  Here, there is no such evidence; there is only a disagreement on why Raytheon laid Miller off.

Thus, there is no "substantial conflict" in evidence as to whether Raytheon acted knowingly or recklessly.  *See also Marks v. Kare II*, 84 F.3d 1074, 1089 (8th Cir. 1996) (negligent mistake does not suffice to establish willfulness); *Carberry v. Monarch Marking Sys., Inc.*, 30 Fed.Appx. 389, 395 (6th Cir. 2002) (plaintiff, to establish willfulness, must show that defendant acted at least recklessly).  Consequently, the willfulness finding should be set aside.  It should be set aside because mere disagreement about why an employer did what it did does not support a willfulness finding.

*C. Award of past pension benefits is an equitable remedy to be decided by the court, and should be set aside*

Front-pay is an equitable remedy to be decided by the court. Pension benefits, by definition, are payments expected in the *future*, to be considered by the court in determining a front-pay award, and as such, do not represent back pay and are not appropriate for the jury to consider.  *See Bourdais v. City of New Orleans, et al.*, 2005 U.S. Dist. LEXIS 41047 at *65 (E.D. La. April 29, 2005) ("lost pension benefits are in the nature of 'front-pay' or future damages."); *Skalka, et al. v. Fernald Environmental Restoration Management Corp., et al.*, 178 F.3d 414, 425-26 (6th Cir.1999) (holding that any portion of the jury's "back pay" award which included the plaintiff's expected pension benefits should be treated as front pay rather than back pay).

The Fifth Circuit has consistently held that the court determines whether an award of front-pay is appropriate, and if so, the amount of the award.  *Julian v. City of Houston, Texas*, 314 F.3d 721, 728-29 (5th Cir. 2002); *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 127 (5th Cir. 1992).  Consequently, the damages question regarding "past pension benefits" should not have

been given to the jury for consideration, and the amount awarded in the amount of $227,000 should be set aside.

Further, even if this amount is not set aside, Defendant requests that (a) the amount not be considered by the court in determining the amount of liquidated damages, in that it does not truly reflect "back-pay"; and, (b) the amount be remitted to apply an appropriate discount rate to reflect present value. *See e.g., Skalka*, 178 F.3d at 425-26; *Rodgers v. Fisher Body Div., Gen. Motors Corp.*, 739 F.2d 1102, 1105-06 (6th Cir. 1984) (raising this issue *sua sponte*), *cert. denied*, 470 U.S. 1054, 105 S. Ct. 1759 (1985).

*D. Award of punitive damages is unsupported by the evidence, and should be set aside*

The jury awarded punitive damages under the TCHRA. This punitive damages award should be set aside. Texas courts often look at federal law in interpreting Texas law. The most recent pronouncement on punitive damages by the Fifth Circuit is *Smith v. Xerox Corp.*, 602 F.3d 320 (5th Cir. 2010). In *Xerox*, the Fifth Circuit, in reiterating its earlier case law, held that the finding of a legal violation does not automatically warrant the imposition of punitive damages; namely, that proof of pretext is not sufficient proof to support an award of punitive damages. (citing *Harden v. Caterpillar, Inc.*, 227 F.3d 268, 270 (5th Cir. 2000)).

In setting aside the award, the Fifth Circuit, in *Xerox*, held that courts should review *all* the evidence in determining whether to set aside the award. This review, according to the court, should look for instances of where malice and spite are absent, such as the legitimacy of an employer's actions. Because there was validity to Xerox' actions, even though rejected by the jury in finding liability, the Fifth Circuit set aside the award. In *Xerox*, while noting that there was evidence supporting a liability finding, the court also noted that the employee had been subject to write-ups and discipline prior to engaging in a protected activity that she

claimed resulted in her termination. Thus, there was a plausibility to the defendant's actions, and thus punitive damages were unwarranted.

Similarly, Texas law, in determining whether there is malice and reckless indifference, examines all facts in the case. The leading Texas Supreme Court case is *Southwestern Bell Telephone Co. v. Garza*, 164 S.W.3d 607 (Tex. 2004). There, an employee claimed that he was terminated for filing a workers compensation claim. The Texas Supreme Court set aside the punitive damages award because "while there was some indications that [Southwestern Bell Telephone (SWBT) acted towards Garza with ill-will, spite, evil motive], there was *also* a great many others that it did not. At most, the record reflects that SWBT mishandled the situation, but mere mishandling does not produce a reasonable conviction that SWBT intended to punish Garza without cause." *See also Orion Marketing Group, Inc. v. Morris*, 2008 Tex.App. LEXIS 1192 at *12-13 (Tex.App.—San Antonio, February 20, 2008).

In looking at all the facts, there is no evidence of ill-will or malice or an intention to harm Miller. There is no dispute that the RIF was prompted by legitimate needs. The "I" was not given in order to terminate Miller. Quite the opposite; it is undisputed that the "I" was given *before* a RIF was ever contemplated. (Def.'s App. 20, 45). And, moreover, Miller testified at trial that he had a number of assignments to complete, and that he did not do so (Def.'s App. 21-22, 27-28, 39-44), despite the fact that Miller knew that these assignments given to him by Lyells were very time-sensitive. (Def.'s App. 23-25). Miller testified on each bullet point he was expected to accomplish and did not. There is no evidence that, post-RIF, Miller was treated differently than other employees.

Given all the facts, there is no evidence of ill-will or evil motive, and a punitive damage award therefore cannot be supported and should be set aside.

E. *Award of mental anguish damages is unsupported by the evidence, and should be set aside*

The Fifth Circuit has noted that the Court should be careful in upholding emotional damages awards, supported only by testimony of the plaintiff and a spouse. *Smith v. Lowe's Home Ctrs., Inc.*, 2005 U.S. Dist. LEXIS 12812 at *15-16 (W.D. Tex. June 29, 2005). Here, Miller testified at trial to the following:

√    He did not take any over-the-counter pain medication. (Def.'s App. 29).

√    He did not take any over-the-counter sleep medication. (Def.'s App. 29).

√    He has not sought-out the assistance of a psychiatrist or psychologist or mental healthcare professional and marital counselor, because of or as a result of his termination. (Def.'s App. 30)

√    He offered no medical testimony; testified that he had no evidence of a medical connection between his lay-off and his chest pains or back pains. (Def.'s App. 30-31).

√    He had no loss of medical coverage. (Def.'s App. 31).

√    Despite the lay-off, he was able to meet all of his financial obligations. (Def.'s App. 32).

√    Not being able to sell his home did not cause any financial stress. (Def.'s App. 32).

The mere fact that a plaintiff suffers from anguish as a result of a termination is insufficient to support any award of mental anguish damages. *Flowers v. S. Reg'l Physician Servs.*, 247 F.3d 229, 238-239 (5th Cir. 2001); *Brady v. Fort Bend County*, 145 F.3d 691, 718 (5th Cir. 1998). Rather, there must be additional detailed testimony—lacking here—of the nature, degree and severity of the mental anguish. *Hitt v. Connell*, 301 F.3d 240, 250 (5th Cir. 2002); *Flowers*, 247 F3d at 238-239; *Brady*, 145 F.3d at 718.

Miller's "emotional distress" was of the kind that ordinarily comes from a termination from a position. The mere fact that a plaintiff suffers from anguish as a result of a termination is insufficient to support any award of mental anguish damages. *Brady*, 145 F.3d at 718.

Rather, there must be additional *detailed* testimony—lacking here—of the nature, degree and severity of the mental anguish.

In the alternative, the Court should utilize the Maximum Recovery Rule adopted by the Fifth Circuit; examine similar damage awards in similar circumstances and remit an excessive damage award to those awards with similar facts. In *Vadie v. Mississippi State University*, 218 F.3d 365 (5th Cir. 2000), *cert. denied*, 531 U.S. 1113 (2001), the plaintiff—much as Miller—testified that he felt destroyed by the discriminatory action; that it totally ruined him; and, that he became ill, "not knowing whether it was night time or day time." In *Vadie*, the Fifth Circuit, after receiving awards in similar cases, remitted the mental anguish award from $300,000 to $10,000. Raytheon submits this Court should do likewise.

*F. In the alternative, the Court should remit the mental anguish and punitive damage award to the statutory cap of the TCHRA*

The TCHRA contains statutory caps. In the alternative to its previous arguments, Raytheon moves the Court to remit the punitive and compensatory award(s). *Reynolds v. Octel Communications Corp.*, 924 F.Supp. 743, 748 (N.D. Tex. 1995).

Courts consistently remit such damages pursuant to statutory caps. *Edwards v. Aaron Rents, Inc.*, 482 F.Supp.2d 803, 818 (W.D. Tex. 2006); *Hines v. Grand Casino of Louisiana, L.L.C.*, 358 F.Supp.2d 533, 553 (W.D. La. 2005); *Union Pac. R.R. Co. v. Loa*, 153 S.W.3d 162, 173 (Tex.App.—El Paso [8[th] Dist.] 2004). In the alternative to its previous arguments, Raytheon moves the Court therefore to remit these damages to $300,000 pursuant to Texas Labor Code 21.2585.

*G. Miller cannot reap a double recovery of both punitive and liquidated damages*

The jury's award of both punitive damages under the TCHRA and liquidated damages under the ADEA would provide a windfall, a double recovery, to Miller. Raytheon should not

be punished twice for the same set of actions. *Reynolds v. Octel Comms. Corp.*, 924 F. Supp. 743, 747 (N.D. Tex. 1995). In *Reynolds*, the court held that the plaintiff was entitled to punitive damages under Title VII, but not liquidated damages also under ADEA. The two awards for the same employment actions would constitute an impermissible double recovery. *Id.* The same is true here: the punitive damages award and liquidated damages award are predicated on the same facts, and so Miller is entitled to only one award.

*H. In the alternative, the Court should grant Raytheon a new trial*

If the Court does not grant judgment as a matter of law for Raytheon or remit damages, Raytheon asks that the Court grant it a new trial. As demonstrated by this Brief, the evidence presented at trial does not support the jury's verdict, and so a new trial is appropriate. The verdict was against the great weight of the evidence, and therefore a new trial is warranted. *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612-613 (5th Cir. 1985). In addition, the jury was presented with irrelevant testimony dealing with post-RIF conduct from non-decision makers. It is likely that the jury came to the wrong conclusion based on this irrelevant testimony that was objected to at trial. Therefore, a new trial is appropriate, if the Court does not grant a JMOL or remit the damages.

Respectfully submitted,

By: _____ /s/ Michael P. Maslanka _____
**Michael P. Maslanka**
Texas State Bar No. 13148800
mmaslanka@fordharrison.com
**Buena Vista Lyons**
Texas State Bar No. 00797630
vlyons@fordharrison.com

**FORD & HARRISON LLP**
1601 Elm Street, Suite 4450
Dallas, Texas 75201
Telephone:     (214) 256-4700
Facsimile:      (214) 256-4701

**ATTORNEYS FOR DEFENDANT**
**RAYTHEON COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6th day of September, 2010, the undersigned counsel-of-record for Defendant electronically filed the above and foregoing *Defendant Raytheon Company's Motion For Judgment As A Matter Of The Law; Or, In The Alternative, Remittitur; Or, In The Alternative, A New Trial, and Supporting Brief* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel-of-record, as follows:

Hal K. Gillespie, Esq.
Yona Rozen, Esq.
James D. Sanford, Esq.
Edith Thomas, Esq.
Gillespie, Rozen & Watsky, P.C.
3402 Oak Grove Avenue, Suite 200
Dallas, Texas 75204

_____ /s/ Michael P. Maslanka _____
Michael P. Maslanka / Buena Vista Lyons