# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| **RICHARD MILLER** § | |
| § | |
| *Plaintiff,* § | CIV. A. NO. 3:09-cv-0440-O |
| § | ECF |
| *v.* § | |
| § | |
| **RAYTHEON COMPANY,** § | |
| § | |
| *Defendant.* § | |
| § | |

## PLAINTIFF'S BRIEF CONCERNING FRONT PAY AND OTHER RELIEF

Hal K. Gillespie
*Attorney-in-Charge*
Texas Bar No. 07925500
Yona Rozen
Texas Bar No. 17358500
James D. Sanford
Texas Bar No. 24051289

GILLESPIE, ROZEN & WATSKY P.C.
3402 Oak Grove Avenue, Suite 200

Dallas, Texas 75204
Tel:  (214) 720-2009
Fax: (214) 720-2291
E-mail: hkg@grwlawfirm.com
         yrozen@grwlawfirm.com
         jsanford@grwlawfirm.com

**ATTORNEYS FOR PLAINTIFF**

**TABLE OF CONTENTS**

ARGUMENTS AND AUTHORITIES ........................................................................................1

    1.       The Fifth Circuit Directed this Court to Reconsider Its Front Pay Award and Ruled that Reconsideration is Necessary to Effectuate that Ruling and the Statute's Remedial Purpose ...................................................................................4

           a.       The Fifth Circuit Remanded for Reconsideration of Front Pay Because Its "Alterations" to Miller's Remedies "Might Change the District Court's Equitable Calculation[s]" ................................4

           b.       Miller's Losses Continued to Accrue in the Three Years that the Case Was on Appeal, and the Court Should Exercise Reasonable Discretion to Ensure that the Front Pay Award Makes Miller Whole and Does Not Provide an Undeserved Windfall to Either Party ................................................................7

    2.       Limited Expedited Discovery is Needed to Allow the Court to Determine the Proper Amount of Front Pay in Light of the Three Years Since its Initial Determination .................................................................................................12

    3.       Additional Proceedings Are Necessary to Determine the Amount of Attorney's Fees for Appellate and Other Post-Judgment Litigation to Which Miller —as the Prevailing Part—-is Entitled .......................................................13

CONCLUSION       .................................................................................................................14

CERTIFICATE OF SERVICE ................................................................................................15

## **TABLE OF AUTHORITES**

### **CASES**

*Albermarle Paper Co. v. Moody,*
    422 U.S. 405 (1975) ............................................................................................. 7, 8, 13

*Baskin v. Parker,*
    602 F.2d 1205 (5th Cir.1979)...................................................................................... 11

*Brown v, Swann.,*
    10 Pet. 497 (1836) ........................................................................................................ 7

*Buchannon Bd. and Care Home, Inc. v. W. Va. Dept. of Health and Human Services.,*
    532 U.S. 598 (2001) ................................................................................................... 14

*E.E.O.C. v. Enterprise Assoc. of Steamfitters Local 638 of U.A.*
    549 F.2d 579 (2d Cir. 1976)......................................................................................... 9

*Farrar v. Hobby,*
    506 U.S. 103 (1992) ................................................................................................... 14

*Graefenhain v. Pabst Brewing Co.,*
    870 F.2d 1198 (7th Cir. 1989)................................................................................ 10, 11

*Hensley v. Eckerhard.,*
    461 U.S. 424 (1983) ................................................................................................... 14

*James v. Stockham Valves & Fittings Co.,*
    559 F.2d 310 (5th Cir. 1977)........................................................................................ 9

*Julian v. City of Houston, Tex.,*
    314 F.3d 721 (5th Cir. 2002) ....................................................................................... 7

*League of United Latin Am. Citizen No. 4552 (LULAC) v. Roscoe Indep. School Dist.,*
    119 F.3d 228 (Cir. 1997) ........................................................................................... 14

*Maddrix v. Dize,*
    153 F.2d 274 ( 4th Cir. 1946)..................................................................................... 14

*Miller v. Raytheon Co.,*
    716 F.3d 138 (5th Cir. 2013).............................................................................. 2, 5, 10

*Reneau v. Wayne Griffin & Sons, Inc.,*
    945 F.2d 869 (5th Cir. 1991)...................................................................................... 11


*Thompson v. Sawyer*,
 678 F.2d 257 (D.C. Cir. 1982) .................................................................................................7

*Tyler v. Union Oil Co..,*
 304 F.3d 379 (5th Cir. 2002)............................................................................................ 13, 14

*Wilson v. Monarch Paper Co.*,
 939 F.2d 1138 (5th Cir. 1991) ..................................................................................................7

## **STATUTES**

29 U.S.C. § 216(b) ................................................................................................................ 13, 14

29 U.S.C. § 621, *et seq.*, ................................................................................................................1

29 U.S.C. § 626(b) ........................................................................................................................14

42 U.S.C. § 1988 ...........................................................................................................................13

42 U.S.C. § 2000e-5(k) .................................................................................................................13

Tex. Labor Code § 21.001, *et seq.* ................................................................................................1

## **OTHER**

*Winerip, Michael, Set Back by Recession and Shut Out of Rebound.*,
 New York Times August 26, 2013..................................................................................8

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RICHARD MILLER,        § | |
| § | |
| Plaintiff,        § | |
| § | |
| v.        § | CIVIL ACTION NO. 3:09-CV-00440-O |
| § | |
| RAYTHEON COMPANY,        § | |
| § | |
| Defendant.        § | |

### PLAINTIFF'S BRIEF CONCERNING FRONT PAY AND OTHER RELIEF

It is not only appropriate for the Court to examine front pay in light of the Fifth Circuit's decision to remand the case but necessary to effectuate that decision and the statutes' remedial purpose. Given that, it is also appropriate for the parties to engage in limited, expedited discovery into issues bearing directly on the appropriate amount of front pay necessary to make Miller whole—now five and a half years after his termination.

### ARGUMENTS AND AUTHORITIES

After four days of trial in July 2010, the jury unanimously found that Raytheon Company terminated Miller because of his age in violation of both the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code §21.001 *et seq.* [Doc. 102 at 4] The jury also found that Raytheon acted willfully (Question No. 2) and with malice or reckless indifference to Miller's rights (Question No. 6). [*Id.* at 6, 11] The jury awarded $352,179 in back pay and benefits, $227,000 in past pension losses.

Raytheon then moved for judgment as a matter of law to overturn the entire verdict or, alternatively, to eliminate most of jury's damages award. [Doc. 121] The Court upheld the

willful age-discrimination verdict on May 13, 2011 but remitted the mental anguish damages and eliminated the punitive-damages award to avoid double recovery. [Doc. 168] In the end, the Court's September 15, 2011 Final Judgment, judgment awarded Miller (1) $352,179 in back pay, (2) $227,000 in past pension osses, (3) $100,000 in mental anguish damages, (4) $579,179 in liquidated damages (representing a doubling of back pay and back pension benefits), (5) front pay of $186,628 representing "one year's prospective salary," (6) attorney's fees and costs, and (7) post-judgment interest. [Doc. 168, 188]

Raytheon appealed from the May 13, 2011 order resolving its post-trial motion. [Doc. 171] The appeal again sought to overturn the jury's willful age discrimination verdict and, failing that, to undo most of the damages award. Miller later cross-appealed certain remedial rulings and also appealed the order on his motion for attorney's fees. [Doc. 173, 189]

The Fifth Circuit heard oral argument on the parties' appeals on September 6, 2012 and issued its opinion on May 2, 2013. Both parties petitioned for rehearing, which the Fifth Circuit denied on July 30, 2013. In the end, the Fifth Circuit affirmed the age discrimination verdict under both federal and state law, affirmed the denial of Raytheon's motion for new trial, and affirmed the denial of judgment as a matter of law on willfulness.[1] *Miller v. Raytheon Co.*, 716 F.3d 138, 145-146 (5th Cir. 2013). Concerning remedial issues, the Fifth Circuit vacated the liquidated damages award to remove the pension enhancement, vacated the mental anguish award, affirmed the denial of prejudgment interest, affirmed the front pay award, and affirmed the attorney's fee award. *Id.* at 147. As to front pay, the Fifth Circuit expressly stated:

> The district court expressly considered the amount of other damages before arriving at a front pay award. Among these was the liquidated damages    award

---

[1] Raytheon did not appeal the jury's malice finding and thus the Fifth Circuit did not address it. The finding that Raytheon acted with malice or reckless disregard for Miller's rights is intact.

it attached to Miller's enhanced pension, which we have vacated and shifted to front pay. We have also vacated the mental anguish award. Because it is possible that these alterations might change the district court's equitable calculation of front pay, we remand the front pay award for reconsideration in the court's discretion.

*Id.* at 149.

The court's concluding statement was "we **AFFIRM** in part, **VACATE** in part, and **REMAND."** *Id.* (emphasis in original).

Miller contends that the Fifth Circuit's opinion requires this Court to now exercise its discretion in reconsidering the front pay award in light of the Fifth Circuit's rulings. Miller contends further that the court should consider the now-known facts—that Miller, fired at age 54, remains unemployed despite his diligent efforts to find a job. In other words, the certain harm from the illegal, malicious termination continues to this date. This court's reassessment of front pay should evaluate the relief necessary to make Miller whole for the harm caused by Raytheon's willful and malicious age discrimination and address front pay based on the now-known facts, including the Fifth Circuit's reduction of Miller's liquidated damages and elimination of mental anguish damages.

Conversely, Raytheon contends that "the lost pension benefits must be discounted [to present value] when the Court reconsiders the front pay award… but otherwise, the front pay award should not be altered." [Joint Status Report at 3 (Doc. 201) (Sep. 6, 2013)]

1.  **The Fifth Circuit Directed this Court to Reconsider Its Front Pay Award and Ruled that Reconsideration is Necessary to Effectuate that Ruling and the Statute's Remedial Purpose**

Raytheon argues that there is "no suggestion whatsoever in the Fifth Circuit's opinion that Plaintiff has not already been made whole …." [Joint Status Report at 3 (Doc. 201) (Sep. 6, 2013)] But the Fifth Circuit opinion says otherwise. It expressly directs reconsideration due to "alterations" to the damages award stemming from the court's rulings. Further, even if the Fifth Circuit had not said so explicitly, the need to reconsider front pay flows logically from the nature of the court's decision and the statutes' central remedial purpose.

(a)  **The Fifth Circuit Remanded for Reconsideration of Front Pay Because Its "Alterations" to Miller's Remedies "Might Change the District Court's Equitable Calculation[s]"**

Raytheon invites the district court to abuse its discretion. Raytheon suggests that this is a simple arithmetic problem that the court can dispose of without additional evidence. According to Raytheon, all that is needed is to deduct the $227,000 pension enhancement from the liquidated-damages award and to add that figure—discounted to present value—to the front pay award.[2] But the matter is not so simple. If that were the Fifth Circuit's intent, the Fifth Court could have rendered its judgment without the need for remand. Moreover, Raytheon's suggestion contravenes the approach district courts are required to use in making equitable determinations of front pay.

The Fifth Circuit "remand[ed] for reconsideration of the front pay award." [Opinion at 2; *see also id.* at 16] Its decision to treat the pension enhancement as front pay required remand and

---

[2] Raytheon's contention that the pension enhancement must be reduced to present value if it is awarded as front pay is incorrect. There is no need to discount this figure because it is fixed, it had accrued by the time of the judgment, and there is no need for speculation. The amount was fixed as of Miller's 55th birthday and could be calculated with precision as of the date of the jury verdict. Indeed, Raytheon's own benefits office calculated the figure and reported it to Miller as early March 2008. [PX 4/RM 208; Vol 6/71:11-74:10]

reconsideration. [*Id.* at 11 ("The judgment must be changed to treat this pension enhancement as front pay and eliminate it as a basis for liquidated damages.")] The decision to vacate the mental anguish award also contributed to the need for reconsideration. As the opinion notes, "[t]he district court expressly considered the amount of other damages before arriving at a front pay award." *Miller*, 716 F.3d at 149. Since the Fifth Circuit shifted pension benefits to front pay and vacated the mental anguish award, "it is possible that these alterations might change the district court's equitable calculation of front pay…." [*Id.* 15-16][3] Consequently, the Fifth Circuit remanded "the front pay award for reconsideration in the court's discretion." *Id.*

The Fifth Circuit's statement that the "district court expressly considered the amount of other damages" is recognition that this Court factored in the amount of liquidated and other damages before fixing the amount of front pay at "one year's prospective *salary*." [Doc. 168 at 31-32 (emphasis added)] This Court expressly considered what it viewed as a "substantial" liquidated-damages award among other factors in limiting front pay to one year of salary.[4] [*Id.*] This amount was designed to "permit [Miller] an additional period of time to seek new employment but avoid an undeserved windfall." [*Id.*][5]

---

[3] At the September 7, 2012 oral argument, then-Chief-Judge Jones opined that she was "quite certain [that] the district court's front pay award had a relationship to its allowing the jury to include that [$227,000]." [Oral Ar. Recording at approximately 0:27:05] That the Fifth Circuit viewed the district court's back pay, front pay, and interest rulings as intertwined should not surprise Raytheon.

[4] The Court also used the liquidated damages award (which has now been substantially reduced) to deny pre-judgment interest. [Doc. 168 at at 32]

[5] The reconsideration of front-pay should focus on now-known facts that are available to the Court. When the Court on May 13, 2011, limited front pay to one year's salary to "avoid an undeserved windfall" to Miller, it had the testimony of Raytheon's economist, Dr. Helen Reynolds, predicting that Miller would promptly find a job. Raytheon may ask the Court to ignore the now-known fact that Miller, as of September 18, 2013, has been looking diligently for work and remains unemployed. But it would be even worse for this Court to ignore the known

After the Fifth Circuit's decision, the liquidated damages award is not as "substantial," since it no longer includes the $227,000 pension enhancement, and Miller receives no compensation for emotional harm. Thus, two of the considerations on which the initial front-pay determination rested no longer exist, and these "alterations might change the district court's equitable calculation of front pay...." Thus, the Court should reconsider the front-pay award in light of Miller's lower recovery and the now-known facts about what the unlawful (and malicious) termination did to Miller's employment situation.

The initial front-pay award relied on Miller's re-employment prospects. [Doc. 168 at 31-32] Specifically, the Court noted Dr. Helen Reynolds's testimony and concluded that "similar supply chain positions are available in the current environment making it likely Plaintiff can obtain substantial employment in the near future." [*Id.*] The passage of time and Miller's ongoing unemployment—despite his efforts—dispels Dr. Reynolds's rosy (and now dated and demonstrably incorrect) forecast. The Court should reconsider the initial front pay award in light of the now known truth. The "one year's prospective salary" is demonstrably inadequate to cover the period between jobs for Miller. Based on the now-known facts, awarding front pay past May 13, 2012 certainly will not provide Miller "an underserved windfall." If anything, stopping front pay on May 13, 2012 when Miller remains unemployed though diligently searching from employment as of September 18, 2013, would provide Raytheon a windfall in under-

---

facts than to engage in unfounded speculation. Raytheon's approach asks the Court to do worse than to engage in unfounded, optimistic speculation that Miller will now swiftly find a replacement job; Raytheon's approach asks the Court for an award based on the false premise that Miller found a replacement job on or before May 2012, which he did not.

6

compensating Miller for more than 21 months of unemployment and compensation losses due to Raytheon's unlawful conduct.[6]

**(b) Miller's Losses Continued to Accrue in the Three Years that the Case Was on Appeal, and the Court Should Exercise Reasonable Discretion to Ensure that the Front Pay Award Makes Miller Whole and Does Not Provide an Undeserved Windfall to Either Party**

As this Court noted, the "remedial provision of the ADEA is to make the individual who is the victim of discrimination whole." [Doc. 168 at 29 (citing *Julian v. City of Houston, Tex.*, 314 F.3d 721, 728 (5th Cir. 2002)] As with other anti-discrimination statutes, the ADEA aims to "secure complete justice."[7] Front pay awards are no different than back pay or compensatory remedies in this regard.[8] Rather, the front pay determination asks simply whether the award "will further the goals of ending illegal discrimination and rectifying the harm it causes."[9]

---

[6] Notably, the traditional rule in this Circuit is that "uncertainty in determining what an employee would have earned but for discrimination should be resolved against the employer." *See Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1147 (5th Cir. 1991); *see also Julian v. City of Houston*, 314 F.3d 721, 729 (5th Cir. 2002)(explaining that "the fact that calculating front pay involves some degree of speculation is a risk that [the employer] must bear as a proven discriminatory employer").

[7] *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975)(quoting *Brown v. Swann*, 10 Pet. 497, 503 (1836)(internal punctuation omitted)). The Supreme Court noted in *Albemarle* "that given a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered from past discrimination." *Id.* at 421. Raytheon's suggested approach to front pay would literally leave Miller unwhole for injuries suffered through past discrimination, and with zero in true front pay – the amount of income loss Miller will suffer in the future. The losses from May 13, 2011 to September 18, 2013 are now known, and the front pay analysis by this Court should take those known losses into account, plus the amount of now-reduced liquidated dates, the fact that Miller receives zero for mental anguish, and the likely future (from September 18, 2013 forward) income losses Miller is likely to incur due to Raytheon's past discrimination.

[8] *Thompson v. Sawyer*, 678 F.2d 257, 292 (D.C. Cir. 1982).

[9] *Id.*

The Court is charged with making a front pay determination consistent with the statutes' remedial aim. Part of that obligation is to deal with the facts. While back pay is not reopened, it is a demonstrable fact that Miller has lost work and pay from his termination through today. The ADEA and TCHRA say that he should be paid for those losses to do "complete justice."[10] Nonetheless, Raytheon would urge the Court to accept the fiction that Miller's harm ended on May 13, 2011, though he has not yet received a penny from Raytheon as compensation for his losses and though he has not yet found a job.[11]

Of course, the Court's front-pay award in May 2011 did not end the harm that Miller was experiencing after his discriminatory firing. That harm—lost employment compensation and benefits—continued to accrue during the three years that the case was on appeal. Indeed, it can be expected to worsen as Miller remains out of the workforce and becomes increasingly less marketable.[12]

Raytheon's appeal and the Fifth Circuit's ruling thereon has had the unfortunate (for Raytheon) and fortunate (for justice) consequence of requiring a remand as to front pay. The Fifth Circuit properly (and in binding fashion) requires this Court to exercise its discretion in light of the way the Fifth Circuit ruling changed the "facts" upon which this Court made its front

---

[10] *Albermarle Paper Co.*, 422 U.S. at 418 (internal punctuation omitted).

[11] Raytheon's argument is actually more unfair than this. The jury rendered it verdict on the back pay award of $352,179 on July 13, 2010. [Doc. 102 at 10] Then the Court awarded one year of front pay on May 13, 2011—ten months after the verdict. Raytheon would have this Court disregard the ten months of income loss Miller suffered, due to past discrimination by Raytheon, from July 13, 2010 until May 13, 2011. Miller respectfully asks the Court to deal with the now-know fact that since trial, Miller has been unemployed due to Raytheon's illegal act, and front pay should take all of Miller's losses account, providing a windfall to neither Miller nor Raytheon.

[12] Cf. Winerip, Michael, Set Back by Recession, and Shut Out of Rebound, New York Times, Aug. 26, 2013 (available at: http://www.nytimes.com/2013/08/27/booming/for-laid-off-older-workers-age-bias-is-pervasiver.html?_r=0)( last visited on Sep. 18, 2013).

pay determination in May 2011. Then-Chief-Judge Jones commented to Raytheon's counsel at oral argument that appealing the pension-benefits issue may prove a "Pyrrhic victory" when front pay is reconsidered on remand. [Oral Ar. Recording at approximately 0:25:14] The Panel recognized that the appeal ultimately could result in a more favorable front-pay ruling once the "altered" damages elements are accounted for. On remand, the Court's obligation is to "get it right." If doing so shows that Miller is entitled to a more front-pay than earlier awarded, then Raytheon's appeal was indeed a Pyrrhic victory. But that would nonetheless be a victory for justice since it would effectuate the ADEA and TCHRA.

Similarly, there is no reason to freeze circumstances in place as of May 2011 or to deem irrelevant the evidence of the facts that have occurred since then. In the Fifth Circuit's often-quoted formulation in *James v. Stockham Valves & Fittings Co.*, front pay is "calculated to terminate on the date a victim of discrimination attains an opportunity to move to his 'rightful place' rather than on the date the order granting relief is entered."[13] It is the "date of actual remedying of discrimination, rather than the district court's order, which should govern…."[14] The *James* court noted that it is appropriate in certain circumstances even for the court to "exercise continuing jurisdiction over the case and [to] make periodic back pay awards until the workers" can obtain the position that they would have held absent discrimination."[15]

A hearing on front pay (as requested by Miller and opposed by Raytheon) will show that Miller has not yet attained his "rightful place" and the discrimination is not yet remedied. This Court has an opportunity and an obligation to exercise reasonable discretion in reconsidering the

---

[13] *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 358 (5th Cir. 1977).

[14] *Id.* (quoting *EEOC v. Enterprise Assoc. of Steamfitters Local 638 of U.A.*, 549 F.2d 579, 590-91 (2d Cir. 1976).

[15] *Id.* at 358.

front pay award (*Miller*, 716 F.3d at 149) due to Raytheon's appeal of liability and virtually each element of damages. The Court once again has jurisdication over the matter, and it should assess front pay based on the now-known facts.

The Seventh Circuit faced a similar question in *Graefenhain v. Pabst Brewing Co.*, a case which Raytheon cites but which supports Miller.[16] In *Graefenhain*, a jury found willful age discrimination.[17] The plaintiffs requested front pay, but the district court initially held that one of the plaintiff's—another Miller—was not entitled to front pay because he had not shown the infeasibility of reinstatement.[18] While reconsideration of that decision was pending, the court granted judgment as a matter of law on the liability verdict, mooting the front pay issue.[19] The Seventh Circuit reversed that ruling and reinstated the verdict.[20]

On remand, the district court awarded front pay but, after an evidentiary hearing, concluded that the amount should only cover five months due to intervening circumstances (namely, a RIF that would have affected the plaintiff).[21] The plaintiffs appealed, arguing that the court should have made its front pay determination based only on facts known prior to the first appeal. That is, like Raytheon, the plaintiffs argued that the pre-appeal determination, based on pre-appeal evidence, was frozen in time. *Graehenhain* was therefore an opportunity for the

---

[16] *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198 (7th Cir. 1989).

[17] *Id.* at 1202.

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

Seventh Circuit to examine when a district court may reopen an issue like front pay after an appeal effecting the award.

The Seventh Circuit's analysis began with what it viewed as the closest analogy: motions for new trial.[22] In that situation, the general rule is that "upon reversal and remand for further consistent proceedings the case goes back to the trial court and stands for determination of the issues presented *as though they had not been determined before*," subject to the legal principles and directions in the appellate court's opinion.[23] The district court's reconsideration of front pay was proper in *Graehenhain* because the court treated on remand as though it "had not been determined before."[24]

Of course, the *Graehenhain* court was not opening the door for *ex post* attacks front pay or other future damages simply because "the district court's subsidiary findings or predictions turn out to have been mistaken."[25] The Seventh Circuit emphasized the multi-faceted and predictive assessment that goes into front-pay awards.[26] But it concluded that "the considerations which support the finality of a front pay award" do not apply where "the front pay issues [are reopened] for reasons having no relation to the intervening events."[27] In the end, the Seventh

---

[22] *Id.* at 1207.

[23] *Id.* (emphasis in original); *see also Baskin v. Parker*, 602 F.2d 1205, 1210-11 (5th Cir. 1979)(explaining that "the normal practice is to decide a case on the record made at the first trial" but noting the lack of "authority for the proposition that additional evidence may not be authorized on remand in the interests of justice").

[24] *Id.*

[25] *Graefenhain*, 870 F.2d at 1208.

[26] *Id.*; *see also Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991)(explaining that front-pay determinations require "intelligent guesswork" to arrive at a reasonable figure).

[27] *Graefenhain*, 870 F.2d at 1208.

Circuit held that it was proper for the district court to consider "intervening circumstances" in assessing front pay on remand in either of two circumstances: (1) where no front pay award was made, and (2) where a front pay award has been vacated for "independently sufficient reasons."[28]

The latter is the case here. Raytheon's appeal of the Court's back-pay and liquidated-damages rulings resulted in "alterations" to the mix of damages. In the meantime, Miller's economic harm since trial, which could not have been known to the Court as of its May 13, 2011 ruling, is now known, and Miller's prospects for re-employment are—as a matter of fact—not what Raytheon's expert (Reynolds) projected. The front-pay issue is now reopened due to reasons independent of those changed circumstances. The Court not only once again has jurisdiction over the front-pay issue but it has an obligation to exercise reasonable discretion to see that Miller is made whole. Miller urges the Court to fulfill that obligation by reconsidering front pay based on present circumstances.[29]

2.  **Limited, Expedited Discovery is Needed to Allow the Court to Determine the Proper Amount of Front Pay in Light of the Three Years Since its Initial Determination**

The need from additional discovery follows from the need for the Court to reconsider the appropriate amount of front pay. The Court rested its earlier determination on growth and re-employment forecasts that Miller argued were unrealistic at the time and that are now three years old. Raytheon's compensation growth rates may, in fact, be larger than Dr. Reynolds predicted, and it is a proveable fact that Miller is still not employed in a substantially equivalent position despite his ongoing, diligent job-search efforts. Miller submits that the Court needs this

---

[28] *Id.*

[29] *See id.* at 1208.

information in order to properly reassess the amount of front pay needed to "restore[ Miller] to [the] position where [he] would have been were it not for the unlawful discrimination."[30]

3. **Additional Proceedings Are Necessary to Determine the Amount of Attorney's Fees for Appellate and Other Post-Judgment Litigation to Which Miller—as the Prevailing Party—is Entitled**

Miller is prepared to fully brief the issue of appellate and post-appeal attorney's fees and costs at the appropriate time. But a brief response to Raytheon's arguments concerning fees and costs is necessary.

First, even if logic supported its position, Raytheon still would not be the prevailing party. Unlike Title VII and 42 U.S.C. § 1988, where courts have discretion to deny attorney's fees, an award of attorney's fees to the prevailing plaintiff is mandatory under the FLSA.[31] Section 216(b) states that courts "shall, in addition to any judgment awarded *to the plaintiff* …, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." (Emphasis added)

Second, Raytheon's arguments verge on non-sensical. True, Miller cross-appealed *after* Raytheon's appeal sought to eliminate the entire judgment and underlying verdict. And, true, Miller separately appealed the Court's order on attorney's fees several month later. In the end, while the Fifth Circuit did not sustain Miller's appeals and accepted some—but not all—of Raytheon's remedies arguments, it upheld the liability verdict, affirmed the willfulness finding, and affirmed a judgment in Miller's favor exceeding $1 million.

---

[30] *Albermarle Paper Co.*, 422 U.S. at 421.

[31] *Compare* 42 U.S.C. § 2000e-5(k)("In any action proceeding under this subchapter the court, in its discretion, may allow …") *and* 42 U.S.C. § 1988 *with* 29 U.S.C. § 216(b)(using "shall"); *see also Tyler v. Union Oil Co.*, 304 F.3d 379, 399 (5th Cir. 2002).

A prevailing plaintiff under the ADEA is entitled to reasonable attorney's fees and court costs at both the trial and appellate levels.[32] A plaintiff "prevails" if he "succeed[s] on any significant issue in litigation which achieves some of the benefit" sought in bringing suit.[33] Thus, to qualify for attorney's fees, a plaintiff need only "obtain at least some relief on the merits of [his] claim."[34]

Raytheon cannot seriously contest that Miller met—even exceeded—this threshold. The question for the Court will be the "reasonable" fee for appellate and post-appeal work. If anything, Raytheon's dispute is with the amount of—not entitlement to—attorney's fees. Miller has not yet, however, requested an amount and certainly has not requested fees for work on his appeal of the attorney-fee order as Raytheon appears to believe. Miller is prepared to submit his motion for fees and costs when this Court directs and under the schedule that it sets.

## CONCLUSION

Miller contends that reconsideration of the initial award of "one year's prospective salary" is necessary due to the rulings above and to effectuate the remedial purposes of the age-discrimination statutes. Accordingly, Miller seeks leave to conduct limited, expedited discovery requested in the Plaintiff's portions of the September 6, 2013 Joint Status Report and asks the Court to establish an expedited schedule for these post-appeal proceedings so that this nearly

---

[32] *See* 29 U.S.C. § 216(b)(cross-referenced in 29 U.S.C. § 626(b)); *Maddrix v. Dize*, 153 F.2d 274, 276 (4th Cir. 1946); *cf. League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. School Dist.*, 119 F.3d 1228, 1236 (5th Cir. 1997)(holding that prevailing plaintiffs in voting rights case were entitled to appellate attorney's fees).

[33] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Buchannon Bd. and Care Home, Inc. v. W. Va. Dept. of Health and Human Services*, 532 U.S. 598, 603 (2001)(defining "prevailing party" as "one who has been awarded some relief by the court ....").

[34] *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 404 (5th Cir. 2002)(citing *Farrar v. Hobby*, 506 U.S. 103 (1992)).

five-year-old lawsuit can be concluded within a reasonable time-frame. Miller also asks that after that discovery the Court conduct a supplemental hearing as to front pay for the presentation of evidence.

| | |
|---|---|
| DATED:  September 18, 2013 | Respectfully submitted,<br>GILLESPIE, ROZEN & WATSKY P.C.<br>3402 Oak Grove Avenue, Suite 200<br>Dallas, Texas 75204<br>Tel:  (214) 720-2009<br>Fax: (214) 720-2291<br>E-mail:  hkg@grwlawfirm.com<br>             yrozen@grwlawfirm.com<br>             jsanford@grwlawfirm.com<br><br>    /s/ Hal K. Gillespie<br>    Hal K. Gillespie<br>    *Attorney-in-Charge*<br>    Texas Bar No. 07925500<br>    Yona Rozen<br>    Texas Bar No. 17958500<br>    James D. Sanford<br>    Texas Bar No. 24051289<br><br>**ATTORNEYS FOR PLAINTIFF** |

### CERTIFICATE OF SERVICE

The undersigned certifies that on September 18, 2013 he electronically submitted the foregoing document to the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court.  The electronic case files system sent a "Notice of Electronic Filing" to the following individuals, who have consented in writing to accept this Notice as service of this document by electronic means: Ron Chapman, Jr., OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., and Michael P. Maslanka, Esq., of CONSTANGY, BROOKS & SMITH, attorneys for Defendant Raytheon Company

    */s/ James D. Sanford*
    One of Plaintiff's Counsel