## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| RICHARD MILLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:09-cv-440-O |
| | § | |
| RAYTHEON COMPANY, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## MEMORANDUM OPINION & ORDER

This case is on remand from the United States Court of Appeals for the Fifth Circuit. *See*

*Miller v. Raytheon Co.*, 716 F.3d 138 (5th Cir. 2013). The two matters before the Court are Plaintiff

Richard Miller's ("Miller" or "Plaintiff") motion for attorneys' fees and Plaintiff and Defendant

Raytheon Company's ("Raytheon" or "Defendant") post-remand briefs concerning front pay and

other benefits.[1] These matters have been fully briefed and are ripe for determination.

## I.    FACTUAL & PROCEDURAL BACKGROUND

Miller filed this lawsuit on March 6, 2009, alleging that Raytheon terminated him because

of his age. *See* Pl.'s Original Compl., ECF No. 1.  Miller was 53 years old at the time he was

---

[1] Before the Court are Plaintiff's Supplemental Federal Rule 54(d) Motion for Attorneys' Fees and Costs (ECF No. 206), filed October 16, 2013; Appendix to Plaintiff's Supplemental Federal Rule 54(d) Motion for Attorneys' Fees and Costs (ECF No. 207), filed October 16, 2013; Defendant's Response to Plaintiff's Supplemental Federal Rule 54(d) Motion for Attorneys' Fees and Costs ("Defendant's Objections")(ECF No. 211), filed November 6, 2013; Plaintiff's Reply to Defendant's Objections (ECF No. 218), filed November 20, 2013; Defendant's Sur-Reply to Plaintiff's Reply to Defendant's Objections (ECF No. 223); Plaintiff's Post-Remand Brief Concerning Front Pay and Benefits and Other Relief (ECF No. 208), filed October 23, 2013; Defendant's Trial Brief Concerning Front Pay (ECF No. 210), filed October 30, 2013; Plaintiff's Reply Brief Concerning Front Pay and Benefits and Other Relief (ECF No. 217), filed November 20, 2013; and Defendant's Sur-Reply to Plaintiff's Reply Brief Concerning Front Pay and Benefits and Other Relief (ECF No. 225), filed December 3, 2013.

released and had worked for Raytheon, or a predecessor company, for almost 29 years. *Id.* He asserted a claim for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), and an age discrimination claim under the Texas Commission on Human Rights Act ("TCHRA"). *Id.* Miller sought compensatory damages, punitive damages, equitable relief, attorneys' fees, expert fees, and costs of suit. *Id.* Raytheon defended its decision to release Miller by arguing that it was facing a severe budget short fall, and he was one of many employees included in a reduction in force. *See* Br. Supp. Mot. Summ. J., ECF No. 39-2. The case was submitted to a jury, which found for Miller and awarded him actual, mental anguish, and punitive damages on both claims. *See* Jury Verdict, ECF No. 102.

The Parties filed post-trial briefs in which Defendant argued that the jury's verdict should be set aside, certain damage amounts remitted, or a new trial ordered. *See* Order 2, May 13, 2011, ECF No. 168. Plaintiff contended that judgment should be awarded in his favor in the amount specified by the jury. *Id.* The Court affirmed the jury's verdict of willful age discrimination, held past pension benefits were an element of back pay rather than front pay, awarded liquidated damages, ordered a remitted amount of emotional distress damages, declined to award punitive damages, and awarded approximately $186,628 for one year's front pay. *Id.* After the Court entered judgment, Miller moved for $711,323 in attorneys' fees. *See* Pl.'s Mot. Fees 1, ECF No. 169. The Court granted Miller's motion in part and awarded $488,437.08, after reducing the hours worked and the hourly rate. *See* Order, Sept. 15, 2011, ECF No. 187.

Thereafter, both parties appealed. Raytheon asserted this Court erred in: (1) denying judgment as a matter of law, (2) not granting its motion for new trial, (3) concluding the evidence supported a finding of willful discrimination, (4) allowing the jury to consider the loss of pension

benefits as a component of back pay, and (5) concluding the evidence supported a finding of mental anguish. *Miller*, 716 F.3d at 143. Miller argued the Court erred in: (1) denying recovery for both liquidated damages under the ADEA and for punitive damages under the TCHRA, (2) concluding that the non-economic damages cap of the TCHRA is constitutional, (3) awarding front pay from the date of the verdict instead of the date of the judgment, (4) denying pre-judgment interest, and (5) reducing attorneys' fees. *Id.* at 143-44.

Raytheon prevailed on its fourth and fifth points of error, and Miller did not prevail on any of his points of error. *See generally id.* Specifically, the Fifth Circuit held the past pension benefits must be treated as front pay and the self-serving testimony of Plaintiff and his wife was legally insufficient to support mental anguish damages. *Id.* at 146-47. Ultimately, the Fifth Circuit vacated the liquidated damages award for past pension benefits, vacated the mental anguish award, and remanded for reconsideration of the front pay award. *Id.* at 142. After the Fifth Circuit issued its opinion, Plaintiff filed an opposed motion to transfer consideration of appellate attorneys' fees to this Court. Order, Aug. 29, 2013, ECF No. 199. The Fifth Circuit granted the motion, and following remand, Plaintiff filed its motion for attorneys' fees in this Court (ECF No. 206).

Additionally, the Court required the parties to confer and file a joint status report with the Court addressing how the case should proceed on remand. *See* Order, Aug. 15, 2013, ECF No. 197. In their joint report, the parties disputed the propriety of post-remand discovery concerning the calculation of front pay. *See* Joint Status Report, Sept. 6, 2013, ECF No. 201. Ultimately, the Court denied Plaintiff's discovery request and ordered the parties to brief the issues raised in their joint report: (1) the calculation of front pay, (2) the discounting of pension benefits to present value, and

(3) the calculation of interest.[2] *See* Order, Oct. 9, 2013, ECF No. 205. The Court will now address

Plaintiff's motion for attorneys' fees and the parties' post-remand briefs in turn.

## II.   ATTORNEYS' FEES

### A.   Legal Standard

It is within the court's discretion to award attorneys' fees to a prevailing party for the appeal

of an ADEA case. *Weaver v. Amoco Prod. Co.*, 66 F.3d 85, 89 (5th Cir. 1995) (citing *Hedrick v.*

*Hercules, Inc.*, 658 F.2d 1088, 1097-98 (5th Cir.1981)); *see also Tyler v. Union Oil Co. of Cal.*, 304

F.3d 379, 404 (5th Cir. 2002). Generally, a prevailing party is one who receives "some relief on the

merits." *Tyler*, 304 F.3d at 404 (citing *Farrar v. Hobby*, 506 U.S. 103, 111 (1992)). On appeal, a

party is a "prevailing party," even if they lose on certain issues, so long as their "losses are not of

such magnitude as to deprive [the party] of prevailing party status." *Bode v. United States*, 919 F.2d

1044, 1052 (5th Cir. 1990) (quoting *Leroy v. City of Hous.*, 906 F.2d 1068, 1082 n.24 (5th

Cir.1990)) (internal quotation marks omitted).

The Fifth Circuit employs a two-step process when determining an award of attorneys' fees.

*Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379 (5th Cir. 2010) (citing *Rutherford v. Harris Cnty.,*

*Tex.*, 197 F.3d 173, 192 (5th Cir. 1999)). The first step is the lodestar calculation, "which is equal

to the number of hours reasonably expended multiplied by the prevailing hourly rate in the

community for similar work." *Id.*; *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Black*

*v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). In evaluating the reasonableness of the number

of hours expended, courts determine "whether the total hours claimed are reasonable [and] also

---

[2] Plaintiff has abandoned his request for post-judgment interest, and the Court will not address this issue. *See* Pl.'s Br. 18, ECF No. 208.

4

whether particular hours claimed were reasonably expended." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir. 1995) (quoting *Alberti v. Klevenhagen*, 896 F.2d 927, 932 (5th Cir. 1990), *modified on other grounds*, 903 F.2d 352 (5th Cir. 1990)).

Any duplicative, excessive, or inadequately documented time should be excluded from the lodestar calculation. *Jimenez*, 621 F.3d at 379-80. In ascertaining the compensable time, courts determine the appropriate hourly rate based on the prevailing community standards for attorneys of similar experience in similar cases. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011). The burden is on the applicant to establish the reasonableness of the award. *See Dodge*, 174 F. Supp. 2d at 508 (citing *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996); *La. Power & Light Co.*, 50 F.3d at 324; *In re Smith*, 966 F.2d 973, 978 (5th Cir. 1992)).

After calculating the lodestar, the court may adjust the award based on the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[3] *See Jimenez*, 621 F.3d at 380. To adjust the award, the district court must "articulate and clearly apply the *Johnson* criteria." *Dodge*, 174 F. Supp. 2d at 508; *see also Jimenez*, 621 F.3d at 380 (quoting *Perdue*, 559 U.S. at 558) (noting district courts must provide "a reasonably specific explanation for all aspects of a fee determination"). Applying these standards, the Court now considers Plaintiff's motion.

---

[3] The Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

**B.     Analysis**

Miller seeks $166,452 in attorneys' fees for services rendered on appeal and remand.[4] *See*

Pl.'s Reply Def.'s Obj. 10, ECF No. 218. Raytheon contends Miller is not entitled to attorneys' fees,

and if the Court finds he is entitled to fees, the amount requested must be reduced. *See generally*

Def.'s Obj. Pl.'s Mot. Att'ys' Fees & Costs, ECF No. 211. The Court will address each objection

in turn.

1.     Entitlement to Attorneys' Fees

Raytheon contends Miller is not entitled to attorneys' fees for the following reasons: (1) the

Court lacks jurisdiction to award appellate attorneys' fees because Plaintiff did not make its request

on appeal, (2) the Fifth Circuit's mandate did not provide for attorneys' fees, (3) Plaintiff was not

the "prevailing party" on appeal, and (4) Plaintiff would receive an unfair windfall if allowed

appellate attorneys' fees. *See generally* Def.'s Obj. Pl.'s Mot. Att'ys' Fees & Costs, ECF No. 211.

For its first contention, Raytheon cites two cases from the United States Court of Appeals

for the Tenth Circuit. *See* Def.'s Obj. 3, ECF No. 211 (citing *Flitton v. Primary Residential Mortg.,*

*Inc.*, 614 F.3d 1173, 1179-80 (10th Cir. 2010); *Hoyt v. Robson Cos., Inc.*, 11 F.3d 983, 985 (10th

Cir. 1993)). In *Flitton*, the Tenth Circuit addressed its "general rule" that a prevailing party seeking

appellate fees must first make its request in the appellate court. 614 F.3d at 1179 ("Indeed, we

concluded that a district court generally lacks jurisdiction to consider the propriety of appeal-related

---

[4] In his motion, Miller also requested costs. Pl.'s Mot. Att'ys' Fees & Costs 16-17, ECF No. 206.
It appears Miller has abandoned this request, and the Court agrees with Defendant in finding Miller is not
entitled to costs. *See* Def.'s Obj. Pl.'s Mot. Att'ys' Fees & Costs 24-25, ECF No. 211 (citing Fed. R. App.
P. 39(d)(1) ( "A party who wants costs taxed must—within 14 days after entry of judgment—file with the
circuit clerk, with proof of service, an itemized and verified bill of costs.")); *see also* Pl.'s Reply Def.'s Obj.,
ECF No. 218 (not addressing entitlement to costs).

fees if the prevailing party does not first seek such fees on appeal."). Nevertheless, the Court is not

bound by the Tenth Circuit's rule and finds Circuit Judge Gorsuch's partial concurrence and dissent

in *Flitton* is the better approach:

> Congress has directed the federal courts to calculate a fair award for
> the prevailing party in civil rights cases. It would be a "procedural
> contortion," in defiance of that statutory mandate to deny a prevailing
> plaintiff her fees simply for failing to imagine in advance what
> administrative claims processing rule we might adopt. If the plaintiff
> hasn't defied a clearly applicable rule or precedent, she should not be
> denied the fees Congress has authorized. Unless we afford litigants
> the benefit of clarity, they should receive the benefit of the doubt.

614 F.3d at 1184 (Gorsuch, J., concurring in part and dissenting in part) (internal citation omitted).

Moreover, Miller presented his request for attorneys' fees to the Fifth Circuit by filing a motion to

transfer the matter to this Court, which the Fifth Circuit granted. *See* Order, Aug. 29, 2013, ECF No.

199. In fact, the "usual practice" of the Fifth Circuit is to transfer consideration of attorneys' fees

incurred on appeal and fees to be incurred on remand to the district court. *See Schneider v. Perley-*

*Robertson*, 114 F.3d 1182, at *2 (5th Cir. 1997); *Powell v. Rockwell Int'l Corp.*, 795 F.2d 522, 523

(5th Cir. 1986) (citing *Morrow v. Dillard*, 580 F.2d 1284, 1300 (5th Cir.1978)). Accordingly, the

Court finds that is has jurisdiction to consider Miller's request for appellate attorneys' fees.

For its second argument, Raytheon relies on the mandate rule and points to the Fifth Circuit's

silence on appellate attorneys' fees in its mandate. *See* Def.'s Obj. 4-5, ECF No. 211. "The mandate

rule requires a district court on remand to effect our mandate and to do nothing else." *Gen. Universal*

*Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007) (quoting *United States v. Castillo*, 179 F.3d

321, 329 (5th Cir.1999)). The Court does not find this contention persuasive, however, because the

Fifth Circuit directed this Court to consider Miller's request for appellate attorneys' fees. *See* Order,

Aug. 29, 2013, ECF No. 199; *see also  Powell*, 795 F.2d at 523 (remanding post-mandate motion for attorneys' fees to district court "[f]ollowing usual practice"). Accordingly, the Court finds that the mandate rule does not bar its consideration of Miller's motion.

Raytheon also contends that Miller was not the "prevailing party" on appeal because Miller lost on all of its points of error and his total award was reduced by $327,000. *See* Def.'s Obj. 6-10, ECF No. 211. For this contention, Raytheon cites to a Fifth Circuit decision in which the court awarded appellate attorneys' fees for a complete win on appeal and a Tenth Circuit decision in which the court declined to award appellate attorneys' fees based on a partial loss on appeal. *Id.* at 9-10 (citing *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007); *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1557 (10th Cir. 1988)).

In *DeCorte*, the Fifth Circuit summarily granted a request for appellate attorneys' fees after affirming the district court's decision. 497 F.3d at 445 ("Plaintiffs seek attorney's fees for their successful defense of this appeal. 'A long and consistent line of Fifth Circuit precedent allows awards of attorneys' fees for both trial and appellate work.' Accordingly, we award Plaintiffs attorney's fees for this appeal and remand to district court for the amount to be determined.") (internal citation omitted). In *Cooper*, the Tenth Circuit declined to award fees reasoning that, "on balance," an award of fees was not appropriate because the plaintiff only prevailed on some issues. 836 F.2d at 1557.

In sum, *DeCorte* provides little to no guidance on when an award of fees is appropriate and *Cooper* is merely persuasive. When confronted with a request for attorneys' fees by a party who lost on some issues, the Fifth Circuit inquires whether the losses were "of such a magnitude to deprive [the party] of prevailing party status." *Bode v. United States*, 919 F.2d 1044, 1052 (5th Cir. 1990)

(quoting *Leroy v. City of Hous.*, 906 F.2d 1068, 1082 n.24 (5th Cir.1990)). Here, although he did not prevail on his points of error, Miller retains a judgment against Raytheon in excess of $1.6 million. *See* Pl.'s Mot. Att'ys' Fees & Costs 4-5, ECF No. 306; Def.'s Obj. 8, ECF No. 211. Moreover, the Fifth Circuit remanded the front pay award for reconsideration in the Court's discretion, as discussed below, which may provide even greater relief.

Raytheon argues that Miller, nevertheless, is not entitled to prevailing-party status because he did not obtain greater relief on appeal or, at minimum, maintain his judgment on appeal. Def.'s Obj. 7, ECF No. 211. The Court is not persuaded, however, that it is limited to a zero-sum analysis of the appeal in determining whether Miller is a prevailing party. Specifically, the Fifth Circuit inquires whether losses on appeal have stripped a litigant of its prevailing party status. *See Bode*, 919 F.2d at 1052 (quoting *Leroy*, 906 F.2d at 1082 n.24). Here, although his judgement was reduced by $327,000, Miller's willful discrimination verdict against Raytheon remained in tact. Clearly, its liability was the thrust of Raytheon's appeal; thus, Raytheon's assertion that Miller's failure to achieve greater or equal success on appeal carries little weight. Accordingly, the Court finds that Miller's losses on appeal were not so great as to deprive him of prevailing party status.

Lastly, Raytheon contends Miller's request should be denied because an additional award of attorneys' fees would be inequitable in light of Miller's reduced judgment on appeal. Def.'s Obj. 10-11, ECF No. 211. Because the Court considered the degree of success obtained in awarding trial-level fees, Raytheon contends, Miller would receive an unjustified windfall if awarded appellate fees because the Fifth Circuit diminished Miller's trial success. *Id.* Raytheon is correct that the Fifth Circuit has vacated and remanded attorneys' fees for reconsideration in light of damages awards being vacated or altered. *Id.* at 11 n.30 (citing *Ransom v. M. Patel Enter., Inc.*, 734 F.3d 377, 388

9

(5th Cir. 2013); *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 396 (5th Cir. 2003)). These cases are distinguishable, however, because in *Ransom* and *West*, the Fifth Circuit explicitly vacated and remanded the awards for attorneys' fees. *See Ransom*, 734 F.3d at 388 ("We further VACATE . . . the amount of the attorneys' fee award, and we REMAND for reconsideration . . . ."); *West*, 330 F.3d at 396 ("We . . . vacate and remand the [award] of attorney's fees . . . ."). Here, the Fifth Circuit did not vacate the award or direct the Court to reconsider it. *See Miller*, 716 F.3d at 149 ("[W]e affirm the award of $488,437.08 in attorneys' fees."). Accordingly, the Court rejects Raytheon's final contention against an award of appellate attorneys' fees. Having done so, the Court will now undertake a review of the amount of fees requested by Miller.

       2.   <u>Amount of Attorneys' Fees</u>

     Miller seeks $166,452 in attorneys' fees for services rendered on appeal and remand. *See* Pl.'s Reply Def.'s Obj. 10, ECF No. 218. Raytheon contends Miller is entitled to no more than $80,591.79. Def.'s Obj. 24, ECF No. 211. Specifically, Raytheon requests the following reductions to Miller's calculation: (1) capping of Miller's attorneys' hourly rates to the rates awarded at the trial level; (2) 20% reduction to hours block-billed; (3) 20% reduction for time inadequately documented and for unnecessary, excessive, duplicative, and unsuccessful work; and (4) 20% discount for overall lack of success.

     In evaluating Miller's request, the Court employs the Fifth Circuit's two-step process. *See Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379 (5th Cir. 2010) (citing *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 192 (5th Cir. 1999)). The first step is the lodestar calculation. *Id.*; *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). The second step, if applicable, is an adjustment to the lodestar based on the factors set

out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).  *See Jimenez*, 621 F.3d at 380; *see also supra* note 3 (listing *Johnson* factors).

> a.      Lodestar Calculation

The lodestar calculation equals "the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Jimenez*, 621 F.3d at 379. The Court will first address the hourly rates requested.

> i.      Hourly Rates

Miller requests the following hourly rates for the three attorneys who worked on the appeal: (1) $685 for Hal K. Gillespie ("Gillespie"), (2) $550 for Yona Rozen ("Rozen"), and (3) $375 for James D. Sanford ("Sanford").  Pl.'s Reply Def.'s Obj. 10, ECF No. 218. At the trial-level, Miller requested: (1) $825 for Gillespie, (2) $775 for Rozen, and (3) $400 for Sanford. Pl.'s Mot. Att'ys' Fees & Costs 10, ECF No. 169. Ultimately, the Court applied a 30% total reduction to the lodestar to reflect the "inflated hourly rates." *See* Order 9-12, Sept. 15, 2011, ECF No. 187. The Court's total reduction reflects the equivalent of the following hourly rates: (1) $577.50 for Gillespie, (2) $542.50 for Rozen, and (3) $280 for Sanford. *Id.* at 12 n.3.[5] Accordingly, Raytheon asserts that Miller is limited to seeking those same hourly rates for appellate and post-remand work. *See* Def.'s Obj. 12-14, ECF No. 211. For this proposition, Raytheon cites the mandate rule and law-of-the-case doctrine and, alternatively, argues Miller failed to carry his burden of demonstrating the reasonableness of the rates sought. *Id.*

Contrary to Raytheon's assertion, however, the Court is not bound by the hourly rates

---

[5] In short, Miller seeks a $107.50 increase per hour for Gillespie, a $7.50 increase per hour for Rozen, and a $95 increase per hour for Sanford.

awarded at trial. The Fifth Circuit's mandate in no way forecloses consideration of the proper hourly rate on remand. Raytheon cites two cases for its law-of-the-case argument, *Moriarty* and *Walker*. *See* Def.'s Obj. 14 n.43, ECF No. 211.   Raytheon's citation to *Moriarty* for the proposition that the hourly rate awarded by the district court and affirmed by the United States Court of Appeals for the Seventh Circuit became the law of the case is misleading because *Moriarty* dealt with attorneys' fees at a single stage of the proceeding, rather than at trial and subsequent appeal. *See Moriarty ex rel. Local Union No. 727 v. Svec*, 429 F.3d 710, 718-19 (7th Cir. 2005). Similarly, *Walker* provides little to no guidance as Judge Buchmeyer merely noted that the district court's limited application of the *Johnson* factors "appears to be the law of the case" but then cited a Fifth Circuit panel decision which casts doubt on that determination. *See Walker v. U.S. Dep't of Hous. & Urban Dev.*, 1998 WL 25578, at *2-3 (N.D. Tex. 1998) (Buchmeyer, C.J.).

Raytheon offers a liberal reading of the foregoing cases and does not cite any controlling authority directly on point. *See* Def.'s Obj. 14 & n.43, ECF No. 211. Accordingly, the Court will turn to persuasive authority for guidance. The Fifth Circuit rejected a similar law-of-the-case argument to an award of appellate attorneys fees under the Equal Access to Justice Act, opining, "[b]ecause appellate and trial practice concern different types of proceedings, and different types of skills, different hourly rates may be rationally justified at the appellate and district-court levels." *Jackson v. Sullivan*, 987 F.2d 772, at *2 (5th Cir. 1993).   In *Luca v. County of Nassau*, the United States District Court for the Eastern District of New York rejected a higher hourly rate for appellate work noting:

> [T]here will undoubtedly come a time when higher fees would be
> warranted since the current hourly rate cannot logically be frozen in
> time, but the mere assertion by [the attorney] that he has raised his

fees does not, standing alone, suffice.

698 F. Supp. 2d 296, 303 (E.D.N.Y. 2010).

Similarly, in *Palila v. Hawaii Department of Land & Natural Resources*, the court accepted the plaintiffs' request for the same hourly rate on appeal noting, "neither the complexity and importance of the issues nor the quality of the briefs or oral argument indicate that the rate should be higher." 512 F. Supp. 1006, 1009-10 (D. Haw. 1981) (footnote omitted). In dicta, the United States Court of Appeals for the Eleventh Circuit noted, "it is logical, and in compliance generally with attorney billing practices, that the district court might have fashioned a different hourly rate for trial as opposed to appellate work . . . ." *Gilmere v. City of Atlanta, Ga.*, 931 F.2d 811, 815 (11th Cir. 1991). Conversely, the United States Court of Appeals for the Eighth Circuit found "the hourly rate on appeal should reflect the same hourly rate as allowed by the district court. *Ross v. Douglas Cnty., Neb.*, 244 F.3d 620, 621 (8th Cir. 2001).

In light of the foregoing, the Court adopts the following principal: the hourly rate for attorneys' fees on appeal shall be the same as the hourly rate for trial work unless the movant provides sufficient evidence warranting an upward departure. Generally, Miller asserts the two years that have elapsed from the Court's award of trial fees justifies an upward departure. *See* App. Pl.'s Reply Def.'s Obj. (Suppl. Decl. Gillespie), App. 5, ECF No. 219-1. The Court finds that this reason alone is sufficient for the $7.50 increase in Rozen's hourly rate.[6] Accordingly, Rozen's fees will be awarded at an hourly rate of $550. Gillespie's $107.50 increase and Sanford's $95 increase require additional support, however.

---

[6] Raytheon does not seem to suggest that Rozen's rate is unreasonable for reasons beyond the increase from the awarded trial-level rate.

The prevailing market rates for similar work in the relevant community determine the reasonable hourly rate, *McClain*, 649 F.3d at 381, therefore, the Court will look to the prevailing market rates in Dallas. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) ("[T]he relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district sits.") (internal quotation marks omitted). The burden is on Miller to produce sufficient evidence that the requested rates are in line with the prevailing rates in Dallas for similar services by attorneys of "reasonably comparable skill, experience and reputation." *See McClain*, 649 F.3d at 381(citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).

Generally, the reasonable hourly rate is established through affidavits submitted by other attorneys practicing in the community. *Tollett*, 285 F.3d at 368 (citing *Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993)); *see also Miller v. Raytheon Co.*, 716 F.3d 138, 149 (5th Cir. 2013) (noting requested rates were supported by affidavits from attorneys from attorneys' firm and outside attorney). An applicant may also establish reasonableness by directing the district court to fee awards in the same district. *See Inclusive Cmtys. Project, Inc.*, 2013 WL 598390, at *6 (citing *Wheeler v. Mental Health & Mental Retardation Auth. of Harris Cnty.*, 752 F.2d 1063, 1073 (5th Cir. 1985)); *Richardson v. Tex-Tube Co.*, 843 F. Supp. 2d 699, 709 (S.D. Tex. 2012).

In regard to Gillespie's fees, Miller cites an award of $685 per hour for Gillespie's work by a Dallas County district judge and an award of $825 per hour by a judge for the United States District Court for the Southern District of Texas. *See* App. Pl.'s Reply Def.'s Obj. (Suppl. Decl. Gillespie), App. 5, ECF No. 219-1 (citing *Evans et al. v. Sterling Chems., Inc.*, No. 4:07-cv-0626 (Doc. 236) (S.D. Tex. Sep. 10, 2012); *Id.* Ex. D (*Fitzgerald* Order), App. 51-57, ECF No. 207-5). The Court does not find the fee award in *Evans* to be comparable, however, because the award was made by

14

the United Stated District Court for the Southern District of Texas and the case was an ERISA class action. *See Tollett*, 285 F.3d at 368 (defining relevant market); App. Def.'s Obj. Ex. B (*Evans Order*), App. 17-37, ECF No. 212.

*Fitzgerald*, however, is persuasive. On March 2, 2012, Judge Molberg of the 95th Civil District Court for Dallas County, Texas, awarded fees to Gillespie at $685 per hour—the amount presently requested. *See* App. Pl.'s Reply Def.'s Obj. Ex. D (*Fitzgerald* Order), App. 51-57, ECF No. 207-5. The case involved a note claim brought against a former employee allegedly in retaliation for the former employee's age discrimination claim against the employer. *Id.* at 51-52. The jury did not find for the employer on the note claim but did find for the employee on its retaliation claim under the Texas Labor Code. *Id.* at 52. Regarding Gillespie, Judge Molberg noted:

> [T]here is no question that . . . Gillespie is one of the most experienced plaintiff-side employment lawyers in the state. His ability in such cases is not subject to question, and the skill he exercises in the prosecution of cases of this nature is of the highest order. There are few plaintiff lawyers, either locally or statewide, who equal or approach Mr. Gillespie's reputation, experience and ability in the area of labor and employment law. In other words, he is one of the few who stands apart as an attorney of extraordinary ability and competence in this area of law.

*Id.* at 54.

Moreover, Gillespie contends his rate is reasonable in light of a 2012 *National Law Journal Survey*, which illustrates high-billing partners at Gardere Wynne Sewell and Thompson & Knight billing $815 and $830 per hour, respectively. *See* App. Pl.'s Mot. Att'ys' Fees (Decl. Gillespie), App. 5, ECF No. 207-1; *id.* Ex. C (Survey), ECF No. 207-4. Gillespie asserts that he has engaged in employment-law litigation with senior partners of these firms and that his skill level, experience, and expertise are at least equal to that of those partners. *Id.* (Decl. Gillespie), App. 5. Raytheon contends

that the above rates are not comparable because Gillespie's law firm has far fewer attorneys than Gardere and Thompson & Knight.[7] *See* Def.'s Obj. 16, ECF No. 211. Instead, Raytheon cites to the *Texas Lawyer's* annual survey which shows the median average billing rate for an equity partner at a law firm of fewer than 30 attorneys to be $350 for 2012 and 2013. *Id.* (citing App. Def.'s Obj. Ex. A-1 (Survey), App. 6, 212.

Although the size of a law firm is relevant, it is not a dispositive measure of an attorney's skill, experience, and reputation. Gillespie is a highly skilled and well-respected employment-law practitioner, as noted by Judge Molberg. He has approximately forty years of experience in his field and has been board certified in labor and employment law since 1985. *See* App. Pl.'s Mot. Att'ys' Fees (Decl. Gillespie), App. 2, ECF No. 207-1. Gillespie has been consistently recognized by various organizations for his trial and appellate work and has served as a member of the Labor Law Advisory Commission of the Texas Board of Legal Specialization and as first chairperson of the employment law section of the Dallas Bar Association. *Id.* at 2-3. Raytheon does not call any of these accomplishments into doubt but rather relies solely on the size of Gillespie's firm. This approach carries little weight. Accordingly, in light of the fee award in *Fitzgerald*, the rates of top partners at Dallas law firms, and Gillespie's skill, experience, and reputation, the Court finds $685 to be a reasonable hourly rate.

To justify the increase in Sanford's hourly rate, Miller asserts that, since the trial-level award, Sanford has obtained board certification, is now a shareholder in his firm, is handling cases as first-chair attorney, and was awarded fees at a rate of $375 per hour by a federal district court in Dallas.

---

[7] Notably, Gillespie is not requesting the $815 and $830 billed by partners at Gardere and Thompson & Knight. The Court previously rejected Gillespie's request for the top rates billed by Dallas firms. *See* Order 9-10, Sept. 15, 2011, ECF No. 187 (declining to award fees at $825 per hour).

*Id.* at 7.  Raytheon counters that Sanford did not become a shareholder until September 2012, and therefore, this fact does not justify an increase in fees for services rendered from June 2011 through September 2012. *See* Def.'s Obj. 16, ECF No. 211. The Court agrees that Sanford's position as shareholder alone does not justify the increase for the entire time that has elapsed. Sanford did, however, become board certified in labor and employment law shortly after trial on December 30, 2011. *See* App. Pl.'s Mot. Att'ys' Fees (Decl. Gillespie), App. 3, ECF No. 207-1.

Moreover, in *Black v. SettlePou, P.C.*, an FLSA case, Judge Kinkeade awarded Sanford fees at an hourly rate of $375 finding this rate "consistent with the hourly wages of similarly situated attorneys in the Dallas area." No. 3:10-cv-1418-K, 2012 WL 3638681, at *4 (N.D. Tex. Aug. 24, 2012). Raytheon contends this award is distinguishable because the attorneys in *Black* sought $232,400.81 in attorneys' fees but only received $45,000. *See* Def.'s Obj. 18, ECF No. 211. Moreover, the Fifth Circuit recently reversed the trial court's decision and vacated the attorneys' fees award for reconsideration. *See Black v. SettlePou, P.C.*, 732 F.3d 492, 503 (5th Cir. 2013) ("Because we are vacating the actual and liquidated damages awards, we also vacate and remand the attorney's fee award for reconsideration consistent with this opinion.").

The Court, however, does not find these facts sufficient to distinguish *Black.* The district court's decision to reduce the lodestar based on lack of success and the Fifth Circuit's order vacating and remanding the award do not alter the district court's finding that the *hourly rate* sought by Sanford was reasonable. Accordingly, in light of Sanford becoming a shareholder, obtaining board certification, and receiving an award at the hourly rate $375, the Court finds $375 to be a reasonable rate. In sum, Miller's attorneys are entitled to fees at the following rates:

| Attorney | Hourly Rate |
|----------|-------------|
| Hal K. Gillespie | $685 |
| Yona Rozen | $550 |
| James D. Sanford | $375 |

### ii.   Hours Expended

Miller contends his attorneys reasonably expended 348.40 hours for appellate and remand work.[8] *See* Pl.'s Reply Def.'s Obj. 10, ECF No. 218. Raytheon seeks the following reductions: (1) a 20% reduction to time block billed, and (2) a 20% total reduction for time inadequately documented, unnecessary, excessive and duplicative, and unsuccessful. *See* Def.'s Obj. 20-23, ECF No. 211. The Court addresses each objection in turn.

### 1.   *Block Billing*

Raytheon seeks a 20% reduction to the time entries that it identifies as "block billed." *See* Def.'s Obj. 20, ECF No. 211. "'Block billing' is a 'time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" *Humphrey v. United Way of Tex. Gulf Coast*, 802 F. Supp. 2d 847, 864 n.23 (quoting *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1534 n.15 (10th Cir. 1996)). Block billing prevents courts from accurately determining the numbers of hours spent on a particular task, thus "impair[ing] the required reasonableness evaluation." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, No. 3:09-cv-1596-D, 2010 WL 3294248, at *3 (N.D. Tex. Aug. 20, 2010) (quoting *Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-cv-0913-D, 2005 WL 6789456, at *4 (N.D. Tex. Dec. 20, 2005), *aff'd*, 2007 WL 3085028 (5th Cir. Oct. 23, 2007)) (internal

---

[8] Miller initially sought 353.60 hours but reduced this amount following Raytheon's objections. *See* Pl.'s Reply Def.'s Obj. 10, ECF No. 218.

quotation marks omitted); *see also La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 ("[D]ocumentation must be sufficient for the court to verify that the applicant has met its burden."). However, "[a] reduction for block billing is not automatic." *Humphrey*, 802 F. Supp. 2d at 865 (internal quotation marks omitted).

Here, Raytheon contends 103.50 hours in total were block billed. *See* App. Def.'s Obj. Ex. A-2 (Summary), App. 9, ECF No. 212. Of the fifty-one entries noted by Raytheon, only twenty three are for two hours or greater and only eight entries exceed four hours. *See id.* Moreover, while the entries include more than one task, several of the entries reflect a single objective. *See, e.g., id.* ("Call and emails to 5th Circuit re: rescheduling conference; confer w/Opposing counsel re same"). In light of the foregoing, the Court will only apply a 5% total reduction for block billing.

>    2.    *Inadequate Documentation, Unnecessary Work, Excessive*
>           *and Duplicative Activity, and Unsuccessful Work*

Raytheon also seeks a 20% total reduction for time that is inadequately documented, unnecessary, excessive and duplicative, and unsuccessful. *See* Def.'s Obj. 20-23, ECF No. 211. A court may reduce or eliminate the numbers of hours awarded if the documentation is "too vague to permit meaningful review." *La. Power & Light Co.*, 50 F.3d at 326 (describing courts that reduced or eliminated hours for entries that were "vague as to precisely what was done," for records that were "completely missing . . . or lacking in explanatory detail," and for entries such as "legal research" and "trial preparation") (internal quotation marks omitted). "Bare descriptions, without any reference to content or purpose, do not demonstrate that the services were necessary and that the amount of time expended was reasonable." *Humphrey*, 802 F. Supp. 2d at 865 n.25 (quoting *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, 2011 WL 487754, at *10 (N.D. Tex. Feb. 11, 2011))

19

(internal quotation marks omitted).

The Court agrees that some of Miller's entries are vague, however, the Court finds that the majority of the entries are "not so vague or unilluminating that they preclude[] meaningful review."[9] *League of United Latin Am. Citizens v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997). Most of the entries sufficiently identify the legal issues and tasks performed by counsel. *See id.* (quoting *La. Power & Light Co.*, 50 F.3d at 327) (noting courts should be "mindful that practical considerations of the daily practice of law . . . preclude 'writing a book' to describe in excruciating detail the professional services rendered for each hour or fraction of an hour") (internal quotation marks omitted); *Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Housing & Cmty. Affairs*, No. 3:08-cv-0546-D, 2013 WL 598390, at *5 (N.D. Tex. Feb. 15, 2013) (finding entries were not vague because they "describe[d] the subject matter of the task"); *Humphrey*, 802 F. Supp. 2d at 865 (finding entries were not vague because counsel "adequately identif[ied] the particular legal issue, document, purpose of telephone calls and conferences, or service for which they [we]re billing").

The Court is mindful that billing records must be sufficient to allow the courts to conduct a "meaningful review" of whether the hours were reasonably expended, *League of United Latin Am. Citizens*, 119 F.3d at 1233, but attorneys are not required to "describe in excruciating detail the professional services rendered for each hour or fraction of an hour." *La. Power & Light Co.*, 50 F.3d at 327. Accordingly, the Court will consider the entries that are vague but does not find this issue

---

[9] Raytheon cites the following entry as an example, "for attorney's fees; memo to client and team re: same; various e-mails to/from Hal Gillespie re: same." *See* Def.'s Obj. 21, ECF No. 211. Raytheon contends, "[t]hese are not complete sentences or thoughts and it is impossible to understand the activity or purpose of the task . . . ." *Id.* The Court disagrees. Time entries are not required to be in complete sentences, and it is apparent that this entry relates to Miller's request for attorneys' fees. Some entries, however, do not identify the subject matter, such as "Confer with Jim and Hal re: argument." App. Def.'s Obj. Ex. A-2 (Summary), App. 13, ECF No. 212.

to warrant a reduction as significant as Raytheon suggests.

"Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006) (citing *Walker v. City of Mesquite*, 313 F.3d 246, 251 (5th Cir. 2002); *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002)). Here, Raytheon contends Miller's counsel billed for unnecessary work, such as time spent on a possible amicus brief and searching for airfare; excessive and duplicative activity, such as 42.9 hours preparing for oral argument and eight hours of travel time to New Orleans; and unsuccessful work, such as time spent on Miller's unsuccessful appeal. *See* Def.'s Obj. 21-22, ECF No. 211. Miller's counsel contends that it "voluntarily eliminated 38% of its gross hours" and eliminated time spent on the unsuccessful appeal and cross appeal "except where that time was inextricably intertwined with work responding to Raytheon's appeal." *See* Pl.'s Reply Def.'s Obj. 8, ECF No. 218.

The Court agrees that certain entries do reflect improper billing judgment but, again, does not believe these issues to be as great as Raytheon contends. *See, e.g.*, App. Def.'s Obj. Ex. A-2 (Summary), App. 12, ECF No. 212 (billing 0.75 hours for "[s]earch and purchase air fare to NOLA for 5CA argument"). Accordingly, the Court finds that a 10% total reduction is warranted to account for entries that are vague, unnecessary, duplicative, and attributable to unsuccessful work.

*b.* Johnson *Factors*

Raytheon seeks a 20% total reduction for Miller's overall lack of success. *See* Def.'s Obj. 23-24, ECF No. 211. Specifically, Raytheon reiterates its argument that Miller lost on its own appeal and cross appeal and failed to preserve its judgment against Raytheon by losing $327,000 on appeal.

21

*Id.* The Court construes this to be a request under *Johnson*.[10]  *See Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)) ("The Supreme Court has twice made clear that 'the most critical factor' in determining the reasonableness of a fee award in a civil rights suit 'is the degree of success obtained.'").

There is a strong presumption that the lodestar amount is reasonable. *Saizan*, 448 F.3d at 800 (citing *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir.1999)). However, after calculating the lodestar, the court may decrease or enhance the amount based on the relative weights of the twelve factors set forth in *Johnson* . . . [giving] special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Id.* (quoting *Migis v. Pearle Vision*, 135 F.3d 1041, 1047 (5th Cir.1998)) (internal quotation marks omitted).

Both Miller and the Court already discounted the time spent on Miller's unsuccessful points on appeal; thus, any further reduction on this ground is unwarranted. Moreover, the Court finds Raytheon's characterization of Miller as "unsuccessful" unpersuasive in light of Miller's affirmed verdict of willful discrimination and award in excess of $1.6 million. Accordingly, the Court declines to reduce the attorneys' fees award on this ground. In sum, the Court will deduct 15% from the lodestar, and Miller shall be awarded attorneys' fees as follows:

---

[10] Raytheon does not brief the *Johnson* factors and Plaintiff does not seek an increase under *Johnson*. *See generally* Def.'s Obj., ECF No. 218; Pl.'s Mot. Att'ys' Fees 15, ECF No. 206. Accordingly, the Court's discussion of *Johnson* is limited to Miller's overall success.

| Attorney | Hourly Rate | Hours | Lodestar |
|---|---|---|---|
| Gillespie | $685.00 | 109.00 | $74,665.00 |
| Rozen | $550.00 | 11.50 | $6,325.00 |
| Sanford | $375.00 | 227.90 | $85,462.50 |
| Total | | | $166,452.50 |
| **Total after reduction** | | | **$141,484.63** |

## III.   FRONT PAY

On appeal, the Fifth Circuit reduced Miller's liquidated damages award by shifting the $227,000 past pension benefits from back pay to front pay.[11] *See Miller*, 716 F.3d at 149. Because the Court considered the size of the liquidated damages award in its calculation of front pay, the Fifth Circuit remanded the front pay award for reconsideration in the Court's discretion noting the "alterations might change the district court's equitable calculation of front pay."

### A.    Legal Standard

The primary purpose of the ADEA is to make the victim whole. *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 488 (5th Cir. 2007) (citing *Julian v. City of Hous.*, 314 F.3d 721, 728 (5th Cir. 2002)). Accordingly, courts are afforded broad authority to grant legal or equitable relief as appropriate. *Julian*, 314 F.3d at 728. "The court must take care, however, that its fashioned remedy only goes so far as to compensate the victim: ADEA remedies are not meant to punish the defendant or award plaintiff a windfall." *Id.* (citing *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 823 (5th Cir. 1990)). Reinstatement is the preferred equitable remedy, but when it is not feasible, the court may

---

[11] Liquidated damages are determined by doubling the amount of back pay owed to the plaintiff. *Olitsky v. Spencer Gifts, Inc.*, 964 F.2d 1471, 1479 (5th Cir. 1992). Front pay is not doubled. *Miller*, 716 F.3d at 146 (citing *Banks v. Travelers Cos.*, 180 F.3d 358, 364–65 (2d Cir.1999)).

award front pay for future lost compensation. *Julian*, 314 F.3d at 728. "[A]n award of front pay is meant 'to compensate the plaintiff for wages and benefits he would have received from the defendant employer in the future if not for the discrimination.'" *Palasota*, 499 F.3d at 490 (quoting *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 402 (5th Cir. 2002)).

Calculations of front pay are "necessarily speculative in nature" but courts must employ "intelligent guesswork to arrive at the best answer." *Julian*, 314 F.3d at 729 (quoting *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991)). Generally, courts should consider the following factors when determining the proper amount of front pay:

> the length of prior employment, the permanency of the position held, the nature of the work, the age and physical condition of the employee, possible consolidation of jobs, and other nondiscriminatory factors that could validly affect the possible post discharge employment relationship.

*Mitchell v. Sisters of Charity of Incarnate Word*, 924 F. Supp. 793, 803 (S.D. Tex. 1996) (citing *Reneau*, 945 F.2d at 869). Courts should also consider the size of the liquidated damages award when determining the propriety of front pay, but the amount of liquidated damages is only an indicator and not a bright line rule. *Id.* (citing *Shattuck v. Kinetic Concepts Inc.*, 49 F.3d 1106, 1110 (5th Cir.1995)).

## B.    Analysis

Originally, Miller sought an amount of front pay that would represent the wages and benefits he would have earned from the date of trial until he reached age 70. *See* Order 30, May 13, 2011, ECF No. 168. The Court considered the relevant front pay factors, including the "substantial award" Miller received for liquidated damages, and awarded Miller one year's prospective salary as front pay. *See* Order 31, May 13, 2011, ECF No. 168. The parties now present two issues for the Court's

24

consideration: (1) whether the past pension benefits should be discounted to present value and, if so, at what rate; and (2) whether the Court should award additional front pay. The Court will address each issue in turn.

### 1.    Discounting the Past Pension Benefits

In its opinion, the Fifth Circuit noted "[a]ny claim for present damages based on enhanced pension benefits [Miller] would not receive until up to fifteen years later would have had to be discounted to present value in order to represent Miller's actual loss." *See Miller*, 716 F.3d at 146. The parties now agree that the $227,000 past pension benefits should be awarded as front pay but dispute whether this amount should be discounted to present value.[12] Miller contends there is no need to discount the past pension benefits because the benefits would have vested at the time of trial. *See* Pl.'s Br. 16-17, ECF No. 208. Raytheon, on the other hand, argues the Fifth Circuit directed the Court to apply a discount. *See* Def.'s Br. 8, ECF No. 210.

Miller is correct in its assertion that the past pension benefits would have vested at the time of trial, but this does not negate the need to discount to present value. "[A]warding present monetary damages for the loss of a prospective benefit that either may not ultimately be earned, or that may be actually earned and collected in full in the future, would go beyond making plaintiffs' [sic] whole for the unlawful discrimination they suffered. It would provide a windfall bonus." *Miller*, 716 F.3d at 146-47 (quoting *Bourdais v. New Orleans City*, 485 F.3d 294, 300-01 (5th Cir. 2007)) (internal quotation marks omitted).

The enhancement is properly treated as front pay because the Court must make a forward-

---

[12] The Court is not required to award any amount as front pay. *See Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870-71 (5th Cir. 1991), Given the parties' agreement, however, the Court will award the past pension benefits as front pay and will consider this amount in its overall determination of front pay.

looking judgment call to determine whether Miller would have remained at Raytheon until age 55, absent the unlawful discrimination. *Id.* at 146. Moreover, the Court must make another judgment call to determine when Miller would have claimed his benefits. *See id.* It is not enough for the benefits to vest; rather, the Court must determine at what time Miller would begin to receive his pension.

The parties offered conflicting evidence as to Miller's projected retirement age. *See* Order 30-31, May 13, 2011. The Court concluded it was unlikely that Miller would work until age 70 but did not find a specific date at which Miller would likely retire. *Id.* at 30. In light of the record evidence, the Court finds that Miller would most likely retire at age 65. *See id.* at 30-31 (discussing evidence presented). Accordingly, the past pension benefits must be discounted to reflect this finding.

The parties also dispute the appropriate discount rate. Raytheon requested the only rate in the record—5%, which was testified to by Miller's expert. *See* Def.'s Br. 9, ECF No. 210. Miller asks the Court to take judicial notice of current, lower rates. Pl.'s Br. 3, ECF No. 217. The Court will apply the 5% rate reflected in the record. Accordingly, using a period of ten years until retirement and a discount rate of 5%, the past pension benefits shall be awarded in the following amount: $165,756.58.[13]

---

[13] The Court used the following formula:

$$\text{Present Value} = \frac{\text{Future Value}}{(1+R)^T}$$

$$\$165,756.58 = \frac{\$270,000}{(1+5\%)^{10}}$$

2.     Additional Front Pay

At present, Miller's front pay award totals $352,384.58—the sum of one year's prospective salary, $186,628, and the discounted past pension benefits, $165,756.58. In essence, the "substantial award" the Court considered in awarding front pay has been reduced by $227,000. *See Miller*, 716 F.3d at 146-49. Plaintiff asks the Court to reconsider the entirety of the front pay factors and to award future benefits in addition to prospective salary. *See* Pl.'s Br. 3-16, ECF No. 208. The Court declines to do so. The only changed circumstance warranting reconsideration is the reduced liquidated damages award. *See Miller*, 716 F.3d at 146-49. Accordingly, the Court will only reconsider front pay to the extent the $227,000 liquidated damages reduction alters its determination. The Court's findings as to the remaining front pay factors stand. *See* Order 29-32, May 13, 2011, ECF No. 168.

The calculation of front pay is necessarily speculative. *Reneau*, 945 F.2d at 870. Nevertheless, a party must present sufficient evidence to support an award. *Id.* Moreover, a front pay award cannot be used to punish the defendant or provide a windfall to the victim. *Palasota*, 499 F.3d at 491. In short, to award front pay, a court must determine that the amount awarded is supported by the evidence and is not excessive.

To account for the reduced liquidated damages award and its impact on the Court's calculation of front pay, the Court now awards an additional 1.5 years' prospective salary to Miller for a total of 2.5 years' prospective salary. In accordance with Miller's request, the Court declines to apply a growth rate and will award an additional 1.5 years' salary at the $186,628 amount previously found reasonable by the Court. *See* Pl.'s Br. 13, ECF No. 208; Order 31-32, May 13, 2011, ECF No. 168. Therefore, the Court finds Miller is entitled to $632,326.58 in front pay—the

sum of $466,570 for 2.5 years' salary and $165,756.58 for the past pension benefits.

## IV.  CONCLUSION

Based on the foregoing, Miller's motion for attorneys' fees is **GRANTED in part and DENIED in part**, and the Court awards fees and damages as follows:

1.  Back Pay: $352,179.00

2.  Liquidated Damages: $352,179.00

3.  Front Pay: $632,326.58

4.  Trial Attorneys' Fees: $488,437.08

5.  Trial Costs: $32,978.26

6.  Appellate and Remand Attorneys' Fees: $141,484.63

The Court will issue an amended final judgment to reflect the above.

**SO ORDERED** on this **27th day** of **December, 2013**.


Reed O'Connor
UNITED STATES DISTRICT JUDGE